### MISSISSIPPI RIVER FUEL CORPORATION v. FEDERAL POWER COMMISSION.

Nos. 500, 501.

Circuit Court of Appeals, Eighth Circuit.
June 30, 1941.

Frank H. Sullivan, of St. Louis, Mo., and William A. Dougherty, of New York City (Hugh H. Sullivan and Sullivan, Reeder, Finley & Gaines, all of St. Louis, Mo., on the brief), for petitioner.

Richard J. Connor, Asst. Gen. Counsel Federal Power Commission, of Washington, D. C. (William S. Youngman, Jr., Gen. Counsel Federal Power Commission, and W. Russell Gorman, Atty. Federal Power Commission, both of Washington, D. C., on the brief), for respondent.

Before GARDNER and JOHNSEN, Circuit Judges, and COLLET, District Judge.

GARDNER, Circuit Judge.

This is a proceeding to review orders of the Federal Power Commission disallowing proposed increased rates and charges for natural gas by petitioner to its customers Illinois Iowa Power Company and Laclede Gas Light Company.

Petitioner, Mississippi River Fuel Corporation, is a corporation organized under the laws of the State of Delaware and authorized to do business in the States of Delaware, Louisiana, Arkansas, Missouri, and Illinois. Since 1929, it has engaged in the business of purchasing, transporting and selling natural gas to customers by contract along its pipe line route. It produces no gas, but purchases natural gas in the State of Louisiana and transports it through its pipe line to its customers in Arkansas, Missouri, and Illinois, where it is sold to ultimate consumers for domestic, commercial and industrial use. It is not chartered as a public utility and is not endowed with the power of eminent domain. It has no public franchise and its pipe lines do not occupy any public property. Its sales are all effected by negotiated contracts, either with industrial consumers or public utilities.

Among the public utilities to which petitioner makes sales is the Illinois Iowa Power Company, which sells and distributes gas to domestic consumers in East St. Louis and neighboring towns in Illinois. This utility buys the gas from petitioner for purposes of mixing it with the gas it manufactures so as to enrich and increase the British Thermal Unit content of its send-out product. Deliveries of gas by petitioner to this utility commenced on June 11, 1935. On August 26, 1936, petitioner and the Illinois Iowa Power Company made a two-year contract, and the parties have had continuous contract relations since that time. On July 7, 1939, the contract of August 26, 1936, was extended for an indefinite time and until terminated upon ninety days' notice by either party. This extended contract carried a revised capacity and commodity charge for the gas, which resulted in a price up to January 1, 1940 of $0.2343 per thousand cubic feet, and a price subsequent to January 1, 1940 of $0.25075 per thousand cubic feet. It is this latter price which was the subject of the Commission's suspension and cancellation order here under review. On September 29, 1939, the Commission issued a temporary order suspending the rate to Illinois Iowa Power Company which would have become effective under petitioner's contract with that concern as of January 1, 1940. After hearing, the Commission made a final order denying effect to the contract increase and continuing in effect the original contract rate.

The Laclede Gas Light Company is a public utility engaged in the retail distribution of gas for consumption by domestic, commercial and industrial consumers in the City of St. Louis, Missouri. Under a contract with petitioner, that utility purchases natural gas which it mixes with coke oven gas and oil still gas and sells the product to most of its consumers. A few industries purchase the natural gas as supplied by the petitioner. The original contract between petitioner's predecessor and Laclede Gas Light Company was dated September 27, 1929, and provided for resale for industrial purposes and also for sale of natural gas by petitioner for use in mixing or enrichment of other gas or for use in a reformed or processed condition. This contract by its terms terminated July 1, 1940, but on October 23, 1931, a supplemental agreement was entered into, and a further agreement was made November 22, 1935. These contracts cover prices for natural gas to July 31, 1947. The contract price increased January 1, 1940, and, as in the companion case, the increases were enjoined pending hearing, and on final hearing the contract increases were denied effect and the contract rate prevailing prior to January 1, 1940, continued.

Petitioner, seeking a vacation of these orders, contends substantially as follows:

(1) the regulation of petitioner is a violation of the Fifth Amendment; (2) the provisions of the Natural Gas Act, 15 U. S.C.A. § 717 et seq., are inapplicable to petitioner's sale for mixing purposes; (3) the contract price in effect between petitioner and Illinois Iowa Power Company and Laclede Gas Light Company as of January 1, 1940, was a fair and reasonable price.

Petitioner contends that it is a private corporation and not a public utility, and hence, its business is not affected with a public interest, and that legislative fiat can not make a purely private interest a public one. It is also argued that it can not be compelled to deal at a prescribed price with a particular customer.

A natural gas company is defined in Section 2(6) of the Natural Gas Act as a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of gas for resale. Section 2(1) of the same act defines "person" as including an individual or a corporation. Confessedly, petitioner is engaged in the transportation of natural gas in interstate commerce, and it is contended by the Commission that it is engaged in the sale of gas in interstate commerce for resale. The constitutionality of the statute as applied to a corporation transporting or selling for resale natural gas in interstate commerce is upheld by the Circuit Court of Appeals of the Seventh Circuit in the very recent case, Natural Gas Pipe Line Co. v. Federal Power Commission, 120 F.2d 625. The court in that case points out that the Natural Gas Act was passed after an extended investigation by the Federal Trade Commission. The court in upholding the constitutionality of the Act, among other things, says:

"But, where a legislative determination is based upon a very extended administrative investigation, which concluded that an industry was affected with a public interest and that Federal regulation thereof was necessary and that said business or industry is producing and transporting natural gas to be sold to gas companies engaged in public utility businesses in cities and villages, there exists no basis for a successful attack on such determination.

"The natural gas industry controls the source of a commodity of great public importance and widespread consumption, and therefore its regulation by Congress may well be required. At least, Congress, in its wisdom, may so conclude. Courts cannot, and should not, assume a greater wisdom than Congress, and find otherwise. The court's function, at most, would be limited to an inquiry as to the existence of facts which would support legislative determination."

The Act itself (Section 1(a) declares that, "As disclosed in reports of the Federal Trade Commission made pursuant to S.Res. 83 (Seventieth Congress, first session) and other reports made pursuant to the authority of Congress, it is hereby declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest."

It thus appears that there was before Congress when this Act was passed the report of an administrative investigation. The contention that petitioner's business is purely a matter of private concern can not be sustained in the face of a statutory finding to the contrary. Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; Sunshine Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; O. M. Olsen, Secretary of Labor v. State of Nebraska ex rel., 61 S.Ct. 862, 85 L.Ed. ——, 133 A.L.R. 1500, opinion filed April 28, 1941. In the last cited case, the Supreme Court reversed a decision of the Supreme Court of Nebraska, State ex rel. Western Reference & Bond Ass'n v. Kinney, 138 Neb. 574, 293 N.W. 393, which held that a statute of that state fixing the maximum compensation which a private employment agency might collect from an applicant for employment was unconstitutional under the due process clause of the Fourteenth Amendment. The trend of late decisions of the Supreme Court is to the effect that prices may be validly regulated under the Fifth or Fourteenth Amendments even where the business so regulated is not of the character of those traditionally known as public utilities. Thus in Nebbia v. New York, supra [291 U.S. 502, 54 S.Ct. 514, 78 L.Ed. 940, 89 A.L.R. 1469], it is said:

"The due process clause makes no mention of sales or of prices any more than it speaks of business or contracts or build-

ings or other incidents of property. The thought seems nevertheless to have persisted that there is something peculiarly sacrosanct about the price one may charge for what he makes or sells, and that, however able to regulate other elements of manufacture or trade, with incidental effect upon price, the state is incapable of directly controlling the price itself. This view was negatived many years ago."

■ Petitioner urges that our decision in City of St. Louis v. Mississippi River Fuel Corp., 8 Cir., 97 F.2d 726, 730, is determinative of its contention that it is conducting a private and not a public business. We there held that the petitioner was not engaged in selling gas for public use within the meaning of an ordinance of the City of St. Louis. We there said that, "We conclude that under Missouri law the term 'for public use,' as used in the ordinance under consideration, means the sale of gas to the public generally and indiscriminately, and not to particular persons upon special contract."

That issue is not here involved.

■ It is argued that petitioner's contracts were entered into some years before the legislative enactment, and hence, they must be held inviolate against statutory regulation. Having held the statute a constitutional regulation of "an industry * * * subject to control for the public good" (Nebbia v. New York, supra), it logically follows that contracts made by petitioner, even though prior to its enactment, are also subject to regulation in the public interest. Union Dry Goods Co. v. Georgia Public Service Corp., 248 U. S. 372, 39 S.Ct. 117, 63 L.Ed. 309, 9 A. L.R. 1420; Producers Transp. Co. v. Railroad Commission, 251 U.S. 228, 40 S.Ct. 131, 64 L.Ed. 239. In Union Dry Goods Co. v. Georgia Public Service Corp., supra, 248 U.S. 372, 39 S.Ct. 118, 63 L.Ed. 309, 9 A.L.R. 1420, it is said:

"Thus it will be seen that the case of the plaintiff in error is narrowed to the claim that reasonable rates, fixed by a state in an appropriate exercise of its police power, are invalid for the reason that if given effect they will supersede the rates designated in the private contract between the parties to the suit, entered into prior to the making of the order by the Railroad Commission.

"Except for the seriousness with which this claim has been asserted and is now pursued into this court, the law with respect to it would be regarded as so settled as not to merit further discussion.

"That private contract rights must yield to the public welfare, where the latter is appropriately declared and defined and the two conflict, has been often decided by this court."

■ Plaintiff next contends that it is not engaged in the sale of natural gas in interstate commerce for resale within the meaning of the Natural Gas Act. It is not argued in this connection that it does not transport natural gas in interstate commerce, but it is pointed out that the natural gas as delivered by it is not resold for public consumption because both the Illinois Iowa Power Company and the Laclede Gas Light Company use it as an ingredient of a mixture. It may be observed in passing that at least some of the natural gas purchased by the Laclede Company was delivered to its consumers in the same state as it was when purchased from petitioner. Most of the gas, however, purchased by either of these companies is mixed with a manufactured gas so as to increase in certain respects the desirability of the gas sold for use by their customers. Their own product is improved by the admixture of the natural gas. Petitioner traces the various steps in the processes employed and urges that the resulting product has only a slight similarity to natural gas; that it differs in heating value, chemical analysis, specific gravity, and in flame characteristics.

Section 1(b) of the Natural Gas Act recites that, "The provisions of this act [chapter] shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, * * *."

Section 2(5) defines natural gas as "either natural gas unmixed, or any mixture of natural and artificial gas."

The Commission contends that natural gas is a mixture of gases, and that natural gas produced in different fields in different localities has equally distinctive chemical composition, specific gravity and heating value, also, that a fractional part (about one-third) of the gas as delivered by the Illinois Iowa Power Company contains one-third or more of natural gas, and about 12 per cent of the natural gas

is not broken down nor changed in the process or treatment. But be that as it may, it seems clear that the statute applies not only to the sale of natural gas in interstate commerce, but to the transportation of natural gas, and it specifically applies to "natural-gas companies engaged in such transportation or sale." Petitioner transports natural gas and sells natural gas. Natural gas is not only the gas as transported and sold, but by statutory definition natural gas is any mixture of natural and artificial gas, and hence, the send-out product as sold by the Illinois Iowa Power Company and the Laclede Gas Light Company is natural gas within the meaning of this act. While the natural gas resold may not be the same in identical substance as that transported, yet Congress clearly intended to regulate transactions such as are here considered. It has used language appropriate to carry out that purpose. To construe the statute as contended by petitioner would limit it to so restricted a field of operation as to thwart the purpose of Congress and render the act impotent.

■ It is finally urged that the contract price in effect between petitioners and its customers, Illinois Iowa Power Company and Laclede Gas Light Company, as of January 1, 1940, was a fair and reasonable price, and that the burden of proving that the contract price was a reasonable one was improperly placed upon petitioner. Petitioner insists that it had no schedules of rates and charges on file with the Commission, and hence, it is argued that the act is inapplicable since it refers only to "schedules of rates and charges," and not to contracts. Petitioner and its two customers are not affiliated; the contracts were made as a result of business negotiations between parties dealing at arms' length, and hence, it is contended that these circumstances must be accepted as evidence of the reasonableness of the charges, in the absence of any evidence to the contrary.

Section 4(e) of the Act provides that at any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate or charge is just and reasonable shall be upon the natural gas company.

Section 4(c) of the Act provides that under such rules and regulations as the Commission may prescribe, every natural gas company shall file with the Commission, within such time and in such form as the Commission may designate, "schedules showing all rates and charges for any transportation or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services." The Commission accepted the contracts with petitioner's customers as schedules within the meaning of the statute. This, we think, was warranted. Petitioner, however, attempts to give a fixed, unvarying technical meaning to the term "schedules showing all rates and charges for any transportation or sale," and argues that the term contemplates a rate or charge which applies alike to every potential customer of natural gas, but that this was foreign to petitioner's method of business, as it rarely made the same contract with any two purchasers. The argument furnishes an additional reason why petitioner's contracts should be within the regulatory scope of the act. The regulation of the transporter and the large scale seller in interstate commerce was apparently the chief purpose of Congress in enacting the law. It appears from the clear provisions of the act that the permitted rates are to be subjected to the test of a fair investment return on the natural gas companies' property as a whole. Protection of the ultimate consumer and not the intermediate utility was the manifest purpose of the act. In Natural Gas Pipe Line Co. v. Federal Power Commission, supra, it was contended that the reasonableness of the rates should be determined not by what return it is reasonable to secure on the investment, but what it is reasonable to charge for the service rendered. In rejecting this contention, the court said:

"They ignore the well-established holdings, backed by reason and experience, to the effect that a fair return, on a fairly established rate base, supplies the correct test of reasonableness. The value of the service to users is neither a reasonable rule, nor supported by judicial decisions."

■ The rate of return not only may be, but in a utility case must be, the largely determinative factor of reasonableness, subject to the qualification that the rate must not be unreasonable in itself. The value of the service to users is neither a reasonable rule nor supported by judicial decisions. In discussing the ques-

tion of the reasonableness of a rate, Mr. Chief Justice Hughes, speaking for the Supreme Court in Los Angeles Gas & Electric Corp. v. Railroad Commission, 289 U.S. 287, 53 S.Ct. 637, 644, 77 L.Ed. 1180, said: "This court has repeatedly held that the basis of calculation is the fair value of the property; that is, that what the complainant is entitled to demand, in order that it may have 'just compensation' is 'a fair return upon the reasonable value of the property at the time it is being used for the public.' "

Petitioner produced no evidence to show the value of its property used and useful in its operations for serving its customers under the proposed rates and charges. It made no proof of operating costs in rendering that service, nor what would constitute a reasonable rate of return on the property so used. In the absence of such proof, it can not be said that the petitioner sustained the burden of proof imposed upon it. The orders appealed from are therefore affirmed.