**BEL OIL CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent.**

**UNION OIL COMPANY OF CALIFOR-**
**NIA, and The Louisiana Land and Ex-**
**ploration Company, Petitioners,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent.**

**Morris RAUCH et al., Petitioners,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent.**

Nos. 16581, 16583, 16584.

United States Court of Appeals
Fifth Circuit.

April 23, 1958.

Richard E. Gerard, Cullen R. Liskow,
Liskow & Lewis, Lake Charles, La., for
Bel Oil Corp.

Bennett Boskey, Washington, D. C.,
and James D. Heldt, Dallas, Tex., for
Nebo Oil Co., amicus curiae.

Willard W. Gatchell, Gen. Counsel, W.
Russell Gorman, Asst. Gen. Counsel,

Howard E. Wahrenbrock, Solicitor, Louis C. Kaplan, Atty., Washington, D. C., for Federal Power Commission.

George D. Horning, Jr., Washington, D. C. (Hogan & Hartson, Washington, D. C., on the brief), for petitioner Union Oil Co. of California.

R. Graham Heiner, New York City (Cahill, Gordon, Reindel & Ohl, Loftus E. Becker, New York City, on the brief), for Louisiana Land & Exploration Co.

Paul A. Smith (Smith & Fulton, Houston Tex., of counsel), for petitioner Morris Rauch and others.

LeBoeuf, Lamb & Leiby, James O'Malley, Jr., Craigh Leonard, William R. Joyce, Jr., New York City, for Consolidated Edison Co. of N. Y., Intervenor.

David K. Kadane, Edward M. Barrett, Bertram D. Moll, Mineola, N. Y., for Long Island Lighting Co., Intervenor.

William R. Duff, Washington, D. C., J. Harry Mulhern, Edward S. Kirby, Newark, N. J., for Public Service Elec. & Gas Co., Intervenor.

Kent H. Brown, George H. Kenny, Albany, N. Y., for Public Service Comm. of N. Y., Intervenor.

Cullen & Dykman, Jackson A. Dykman, Edwin F. Russell, Robert B. Lisle, Brooklyn, N. Y., for Brooklyn Union Gas & Long Island Lighting Co., Intervenors.

Vincent P. McDevitt, Samuel G. Miller, Eugene J. Bradley, Philadelphia, Pa., Ledoux R. Provosty, Alexandria, La., for Philadelphia Electric Co., Intervenor.

Morgan, Lewis & Bockius, J. David Mann, Jr., Washington, D. C., John E. Holtzinger, Jr., Philadelphia, Pa., for The United Gas Improvement Co., Intervenor.

James B. Henderson, Vice President and Gen. Counsel, William H. Davidson, Jr., Houston, Tex., Richard J. Connor, Gallagher, Connor & Boland, John T. Miller, Jr., Washington, D. C., for Transcontinental Gas Pipe Line Corp., Intervenor.

Before TUTTLE, JONES and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

These petitions, presented on a single record, seek review of an order of the Federal Power Commission, Opinion No. 300, reported at 16 F.P.C. 100–118, dismissing certain rate filings of the petitioners as independent producer natural gas companies.[1] The rate increases would have been from 8.79 cents to 16 cents per Mcf, plus a 1 cent state tax.

On June 7, 1954, the three parties all had contracts with Transcontinental Gas Pipe Line Corporation (Transco), under which they agreed to furnish certain minimum quantities of gas for a period of twenty years, for which the price was fixed "temporarily" at 8.7915 cents per Mcf until November 1, 1954, and 16 cents per Mcf thereafter, with an automatic escalation of one cent every five years. It was on June 7, 1954, that the Supreme Court decided Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035. The Commission subsequently, by Orders 174, 174A and 174B permitted all independent natural gas companies engaged on or since June 7th in jurisdictional sales to file their rates in effect on that date without any supporting data to justify any increases that had theretofore been put into effect. The companies were permitted to file copies of their contracts in lieu of detailed rate schedules.

Petitioners filed their contracts, all of which provided for an automatic increase, on November 1, 1954. Two of the petitioners also filed notice of the increase to 16 cents. The Commission thereupon ordered all of these increases

1. In view of the holding by this Court in Deep South Oil Co. v. F.P.C., 5 Cir., 247 F.2d 882; Shell Oil Co. v. F.P.C., 247 F.2d 900, certiorari denied 355 U.S. 930, 78 S.Ct. 410, 2 L.Ed.2d 413; Humble Oil & Refining Co. v. F.P.C., 5 Cir., 247 F.2d 903, certiorari denied 355 U.S. 930, 78 S.Ct. 410, 2 L.Ed.2d 413; and Continental Oil Co. v. F.P.C., 5 Cir., 247 F.2d 904, we do not give further consideration to the contention that these are not natural gas companies within the purview of the Natural Gas Act, 15 U.S.C.A. § 717.

suspended under the authority of Section 4(e) of the Act. After the period of suspension the rates were permitted to go into effect under the terms of the Act which require reimbursement by petitioners if they should not ultimately be entitled to the rate charged.

A number of local distributing companies and state commissions intervened to oppose the rate increase and Transco intervened on behalf of the petitioners.

After several postponements, urged by petitioners, extended hearings were held. In general it can be stated that the evidence offered by petitioners consisted of proof of the competitive conditions in the Louisiana fields, the contracts negotiated by petitioners and others in that field, and evidence that the contracts were negotiated at arm's length. After the presentation was concluded, without any cross examination or counter proof by interveners, a motion was made to dismiss on the ground that applicants had not sustained their burden of proof that the higher rate was "just and reasonable."

The Commission entered its "Order Postponing Action on Motion to Dismiss and Referring Proceedings to Examiner" in which it said:

"\* \* \* The fact that contracts have been entered into in good faith and in arm's-length bargaining does not make them immune from the regulation in the public interest prescribed by Congress, nor are producer contract terms per se an indication that the prices agreed upon are just and reasonable either initially or as subsequently increased pursuant to escalation clauses or otherwise. (See Colorado Interstate Gas Co. v. F.P.C., 10 Cir., 1944, 142 F.2d 943, 953, affirmed 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206; Mississippi River Fuel Corp. v. F.P.C., 8 Cir., 1941, 121 F.2d 159, 163).

"The exhibit submitted by applicants to show relative field prices is merely a numerical listing of contract prices for gas sold within the pricing area and is insufficient to justify the proposed increases.

"It may be observed that in providing for Commission responsiblity in connection with rate filings the Natural Gas Act makes no distinction between independent producers and interstate pipeline companies. If they are subject to the Act, the same criteria and procedures are prescribed for rate-fixing purposes, since both classes are natural gas companies under the Act. The Commission is free, within the ambit of its statutory authority in rate fixing, to make the pragmatic adjustments which may be called for by particular circumstances (F.P.C. v. Natural Gas Pipeline Co., 315 U.S. 575, 586, 62 S.Ct. 736, 86 L.Ed. 1037). While it is true that the source of our authority over rates of independent producers is contained in Sections (4) and (5) of the Natural Gas Act, we do not say that in fixing the rates of natural gas companies which are independent producers we are compelled to apply the same formula as that applied in fixing the rates of natural gas companies which are interstate pipeline companies.

"In dealing with the rates of interstate pipeline companies, we have pointed to the burden placed by Section 4(e) of the Act upon those natural gas companies seeking approval for rate increases and in appropriated cases have pointed to the failing of some companies to present evidence which would justify the increases, for which reason we have denied applications for approval, and in these actions we have judicial approval. (Mississippi River Fuel Corp. v. F.P.C., 8 Cir., 1941, 121 F.2d 159, 165). The independent producers which are applicants herein are under the same burden as interstate pipeline companies to justify any proposed rate increases, even if their operations may differ.

"Upon consideration of all of these matters and the evidence so far

presented, we would be required to grant the motion to dismiss and to terminate these proceedings, for the evidence does not show that the requested increased rates would be just and reasonable. Nevertheless, solely because this is the first series of cases involving the rates of independent producers upon which we have acted, we will allow Applicants a further period of time beyond which we do not propose to extend the resumption of the hearing, rather than granting the motion to dismiss forthwith.

\* \* \* \* \*

"The Applicants should now be fully prepared to demonstrate the lawfulness of the proposed increases or we must deny the applications and dismiss the proceedings. Reasonable consideration of the rights of the other parties and of the general public will justify no further delays."

Upon the reconvened hearing petitioners introduced additional evidence tending to show that petitioners did not possess any dominating position in the industry, that natural gas is competitive with other non-regulated fuels, that the proposed prices were comparable with unregulated prices for local consumption; that maintenance of such a price is necessary to provide appropriate incentives for exploration and production of natural gas in Louisiana. No evidence was offered to show the actual cost of service to the producers—that is no evidence as to any economic factors related to their financial interests or needs, none as to operating expenses or capital costs, as to the return or profits they were earning under the 8.79 cent rate or which they would earn under the 16 cent rate, no evidence to indicate whether the rate was necessary to maintain credit and to attract capital. It can fairly be assumed, we think, that the failure to adduce such evidence was part of petitioners' trial strategy to make more persuasive their argument in favor of a field price basis, for rate purposes, for

in the brief of Union Oil is the following statement:

"It was the judgment of petitioners that evidence of that type would have led to confusion in the presentation of their case and prejudiced the chances of acceptance by the Commission of the principles which petitioners urged on the Commission as the proper basis of regulation."

Because of the absence of the financial type of evidence, a motion was again made for a dismissal of the application. The Commission referred the case back to the Examiner to make his report, the record was opened for cross examination by interveners, which they waived, and thereafter the Examiner filed his report recommending dismissal because of the failure of petitioners to make out a prima facie case of reasonableness. The Commission, two members dissenting, held that there was a failure to make out a prima facie case of just and reasonable rate and granted the motion to dismiss. The Commission, for the first time, gave a strong indication of what it considered to be essential in the proof of just and reasonable rates. It said:

"We think the recent decision of the Court of Appeals for the District of Columbia circuit, in City of Detroit v. Federal Power Commission, 97 U.S.App.D.C. 260, 230 F. 2d 810, certiorari denied 352 U.S. 829, 77 S.Ct. 34, 1 L.Ed.2d 48, is controlling here."

That part of the City of Detroit decision germane to the Commission's discussion is:

"For, though we hold that method [the rate base or cost of service method] not to be the only one available under the statute, it is essential in such a case as this, that it be used as a basis of comparison. It has been repeatedly used by the Commission, and repeatedly approved by the courts, as a means of arriving at lawful—'just and reasonable' rates under the Act. Unless it is continued to be used at least as a point

of departure, the whole experience under the Act is discarded and no anchor, as it were, is available by which to hold the terms 'just and reasonable' to some recognizable meaning."

Following the order of dismissal, petitioners filed motions for rehearing and asked that the matter be referred once again to the examiner to permit petitioners to tender evidence of cost of service. The motions were denied.

Petitioners strongly contend that they urged the field price, or cost of commodity, evidence as adequate to support a finding of a just and reasonable rate in the best of faith, relying in great part, so they say, on representations to that effect by the Commission itself. They say the Commission in the Panhandle Eastern Pipe Line Co. case, Opinion No. 269, which is the case later reversed by the Court of Appeals for the District of Columbia Circuit, quoted from above sub nom. City of Detroit v. Federal Power Commission, valued the natural gas produced by an interstate pipe line company for rate making purposes on the basis of fair field price rather than on the basis of a calculated rate of return on the company's investment in its producing properties. They say that in applying to the Supreme Court for certiorari in the City of Detroit case, the Commission still stood on the field price theory of rate making. They also point out that the Commission, in its 1956 Report to Congress,[2] recommended an amendment to the Natural Gas Act as follows:

"A standard for pricing or evaluating natural gas as a commodity which would not require use of a rate base or traditional utility rate-making principles, but which would enable the Commission to weigh the interests of the consumer in low prices with the necessity of providing assurance of future gas supplies;"

Petitioners argue from this record and in light of these circumstances, together with the broad scope which the Supreme Court says resides in the Commission in its ascertainment of a just and reasonable rate, first that the evidence was sufficient to establish a prima facie case, and second, if not, it excused their failure to offer the cost of service evidence at the two hearings and the case should be remanded to the Commission to permit them to do so.

In support of the first position, petitioners cite Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333:

"Congress, however, has provided no formula by which the 'just and reasonable' rate is to be determined." 320 U.S. 591, 600, 64 S.Ct. 281, 287.

The Court also said:

"We held in Federal Power Commission v. Natural Gas Pipeline Co., supra, that the Commission was not bound to the use of any single formula or combination of formula in determining rates. Its rate-making function, moreover, involves the making of 'pragmatic adjustments.' Id., 315 U.S. at page 586, 62 S.Ct. at page 743, 86 L.Ed. 1037. And when the Commission's order is challenged in the courts, the question is whether that order 'viewed in its entirety' meets the requirements of the Act. Id., 315 U.S. at page 586, 62 S.Ct. at page 743, 86 L.Ed. 1037. Under the statutory standard of 'just and reasonable' it is the result reached not the method employed which is controlling. Cf. Los Angeles Gas & Electric Corp. v. Railroad Commission, 289 U.S. 287, 304–305, 314, 53 S.Ct. 637, 643, 644, 647, 77 L.Ed. 1180; West Ohio Gas Co. v. Public Utilities Commission (No. 1), 294 U.S. 63, 70, 55 S.Ct. 316, 320, 79 L.Ed. 761; West v. Chesapeake & Potomac Tel. Co., 295

2. 1956 Annual Report of the Federal Power Commission, p. 19.

U.S. 662, 692–693, 55 S.Ct. 894, 906, 907, 79 L.Ed. 1640 (dissenting opinion). It is not theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end." 320 U.S. 591, 602, 64 S.Ct. 281, 287, 88 L.Ed. 333.

See also in this connection, Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 586, 62 S.Ct. 736, 86 L.Ed. 1037, and Colorado Interstate Gas Co. v. Federal Power Commission, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206.

■ We cannot agree that these cases are authority for the proposition that the evidence thus far adduced makes out a prima facie case of reasonableness of the contract price of 16 cents. We do not hold that evidence of field price is irrelevant. We do hold that evidence of unregulated prices in the field is not sufficient to warrant a finding by the Commission that a price comparable to them is just and reasonable within the intendment of the Natural Gas Act. Neither is evidence of the field price when coupled with the opinion of experts that the price must be high enough to provide an incentive for exploration and development of new sources of supply.

Our attention has been called to the opinion and order issued on April 4, 1958, in the matter of Pan American Petroleum Corp., et. al., Opinion No. 310, in which the Commission has found just and reasonable an increased rate from 7.5 to 8.5 cents per Mcf for an Oklahoma field without requiring proof of cost of service. Without having the record of that case before us, it is apparent that the Commission has neverthless withdrawn somewhat from the generality of its holding that a rate-base method must in all events be used at least as a point of departure. Recognizing, however, as we do that the rate increase there was an extremely modest one, we do not conclude from that order that the Commission intends to abandon its position taken as to the petitioners here. In fact the opinion seeks to distinguish these cases. Some of the points of distinction are not, we think, significant. Without deciding that the rate-base method is essential in every rate case, we agree that the Commission did not have sufficient evidence before it to approve these rates as just and reasonable.

■ Upon the second position taken by the petitioners, however, we conclude that the Commission erred in the particular circumstances of these proceedings in not reopening the hearings once again to permit the petitioners to introduce evidence of a rate base which in its written opinion, after the close of the hearing, the Commission said for the first time is an essential part of such an inquiry. We fully share the Commission's conclusion that petitioners were not unaware during the two years of pendency of the matter that evidences of cost of service might in the end be an important part of the proof they would have to make. The Commission takes the position that, with ample warning of the inadequacy of their proof, the failure of petitioners to come forward with such evidence amounted to a calculated gamble by them which they lost, and that they should not be entitled to another opportunity to make out their case. If indeed petitioners made such a gamble, it was an expensive one. If this order stands, the petitioners in this and other cases dealt with by the Court at this time, are required to account for to their customers a substantial sum of between seven and eight million dollars, all or part of which they may really be entitled to keep if their proof finally wins the approval of the Commission of a higher rate. In such circumstances some parties would be unjustly enriched and petitioners would be heavily penalized without reference to the real merits of the controversy.

The regulation of the prices at which thousands of "natural gas companies" may sell to the pipe line companies is a difficult one at its best. It is a field which in many respects requires new formulas to test what is just and rea-

sonable. We think it would be an unjust penalty if we were to apply too strict a rule as to the reception of evidence in such a case. This is clearly demonstrated by order No. 310 in Pan American Petroleum Corporation referred to above. We think it quite clear that in light of that order the Commission might adopt some pragmatic standard to apply to these cases as it did with Pan American, et al.

Holding as we do that the proof was insufficient but that reasonable opportunity should be given to petitioners to bring forth additional proof, we think that we need not notice many of the other contentions of petitioners at this time. We do, however, hold that in line with our previous cases cited in footnote 1, supra, these petitioners are "independent producers" and "natural gas companies" and their sales are subject to regulation under the Act.

■ We also conclude that even though the increases here in issue had been predetermined by contract before the Supreme Court's decision of the Phillips case and thus before the cut-off date of June 7, 1954, they are "rate changes" subject to Section 4(d) of the Act[3] and not an initial rate subject to changes under Section 5(a) of the Act. Section 5(a) places the burden on the Commission or other moving party to prove the initial rate unjust or unreasonable. We passed on a similar question in Mississippi Power & Light Co. v. Memphis Natural Gas Company, 5 Cir., 162 F.2d 388, 390, certiorari denied 332 U.S. 707, 68 S.Ct. 82, 92 L.Ed. 355, where the contract had a "favored nation" clause in it under which the consumer company contended it was entitled to an automatic reduction in rate. We said there:

"The 'favored nation' clause became inoperative after the passage of the Natural Gas Act. Section 4 thereof provides: '* * * every natural-gas company shall file with the Commission * * * schedules showing all rates and charges for any transportation or sale * * *' and 'no change shall be made by any natural-gas company in any such rate * * * except after thirty days' notice to the Commission and to the public. * * *' Rate-making is a legislative function that the courts will not interfere with, at least until the Commission has exercised the function. To give effect to the 'Favored Nation' clause would operate to transfer the legislative function of rate-making from the Commission to the courts."

See also Cities Service Gas Producing Co. v. Federal Power Commission, 10 Cir., 233 F.2d 726.

What we have said with respect to the new rate being a change within contemplation of the Act also answers the complaint by petitioners that the Series 174 orders of the Commission are invalid as applied to them in view of the fact that they had already contracted for the increases prior to June 7, 1954. As pointed out in Cities Service Gas Producing Co. v. Federal Power Commission, supra, the Act itself forbids any changes in rates except under the terms of the Act. So far as is here relevant, all the

3. "Rates and charges; schedules; suspension of new rates. [Sec. 4].

*     *     *     *     *     *

"(d) Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulations, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published." 15 U.S.C.A. § 717c(d).

174 orders do is to implement this provision of the statute.

Other contentions of petitioners whose resolution is not implicit in the decision we now make, are not now passed upon but will await the completion of the record before the Commission.

The petition is granted to the extent that the Commission is directed to reopen these proceedings to afford petitioners reasonable opportunity to adduce such evidence as they may be advised is relevant to the inquiry whether the proposed rate of 16 cents plus 1 cent state tax is just and reasonable. In all other respects the petition is

Denied.