Dan J. HARRISON, Jr., Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

No. 76–4318.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1978.

Guy L. Nevill, Thomas Brennan, J. Evans Attwell, P. M. Schenkkan, Houston, Tex., James B. Atkin, Walter R. Allan, San Francisco, Cal., for Chevron.

Kenneth L. Riedman, Jr., George C. Bond, Richard F. Wornson, Los Angeles, Cal., for Union Oil.

William H. Emerson, Chicago, Ill., for Amoco Production Co.

Before BROWN, Chief Judge, and GODBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The ultimate question in this Natural Gas Act case is whether the natural gas production from four sections of land in Texas has been dedicated to the interstate market so that Commission permission to abandon the dedication is, as it held, required before the gas may be sold intrastate. The dispositive issue is whether a prior application to the Federal Power Commission to sell gas in interstate commerce covered six sections, of which these four were a part, or only two. Because a common sense reading of the application indicates it did not include these four sections, we set aside the Commission's order.

In 1964, John L. Crawford acquired mineral leases in sections 6, 7, 11, 12, 13 and 29 of a tract in Crockett County, Texas. His lessor had completed a successful natural gas well on section 11. Crawford discovered gas on section 29 and began production there also. Crawford entered into a contract with Northern Natural Gas Company exclusively committing all natural gas production from the six sections to Northern, a pipeline which sells gas in interstate commerce. The contract provided that the parties would attempt to secure from the Commission "such Certificates of Public Convenience and Necessity authorizing the service contemplated by this Contract as may be required or deemed necessary."

Crawford applied for the required certificate. The Commission issued it in an order granting a number of certificates "as more fully described in the respective applications, amendments, supplements and exhibits." Crawford's application read, in relevant part:

COMES NOW John L. Crawford . . . and files this Application for a Certificate of Public Convenience and Necessity pursuant to Section 154.91 and Sections 157.-23, et seq., of the Commission's Regulations under the Natural Gas Act for the sale to Northern Natural Gas Company . . . under contract dated June 19, 1964, of the gas produced from reserves underlying leases in *Sections 11 and 29*, Block F, GC&SF Railroad Survey, in Crockett County, Texas.

As is hereinafter more particularly set forth, Applicant proposes to invoke Section 157.28 of the Commission's Regulations in order to commence the sale of gas pending final Commission action upon this application.

. . . . .

Applicant is Seller under that certain Gas Purchase Contract with Northern dated June 19, 1964, which covers the sale of gas produced from certain lands and leases in *Sections 11 and 29*, Block F, GC&SF Railroad Survey, Crockett County, Texas. Pursuant to Section 154.92 of the Commission's Regulations, three copies of the subject contract are being filed with the Commission contemporaneously herewith as Rate Schedules and are incorporated herein by reference for all purposes. A copy of said contract is also attached to the original of this application and is referred to as Exhibit "B".

. . . . .

*Summary of Provisions of the Gas Purchase Contract for which a Certificate is hereby Requested:*

. . . . .

(5) Location of sale:
*Sections 11 and 29*, Block F, GC&SF Railroad Survey
Crockett County, Texas

(emphasis added).

Crawford never produced gas from sections 6, 7, 12 and 13. In 1974 he released his interest in them. Shortly afterwards,

his lessors leased the property to Dow Chemical Company, which assigned half its interest to petitioner Dan J. Harrison. Dow-Harrison completed a successful well on section 12. Believing the gas to be free of any commitment to interstate commerce, Dow-Harrison spurned a purchase offer by Northern, and began negotiating in the intrastate market, where prices were twice as high.

Northern brought a complaint to the Commission, alleging that because Crawford had failed to obtain abandonment permission under 15 U.S.C.A. § 717f(b), the gas could not be diverted from interstate commerce. The Commission agreed, finding the original application had dedicated all six sections to interstate commerce. Harrison filed this petition to review that decision.

■ The law is clear that once natural gas production from a given section of land has been dedicated to interstate commerce, it cannot be diverted from that market without Commission approval. The acceptance of a Certificate of Public Convenience and Necessity authorizing interstate sales constitutes a designation for this purpose. The certificate obviously cannot dedicate more land than is included in the application. The Commission does not contend otherwise. The certificate here clearly covered all the land which the application included. Therefore, whether or not the land in controversy is controlled by the certificate depends upon whether it was included in the application.

■ The Commission's finding is to be affirmed if supported by substantial evidence. 15 U.S.C.A. § 717r(b) (1976). The issue is one of document interpretation, a field where plain meaning controls, absent ambiguity or special usage. See Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 557, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958). Only a common sense construction of documents can meet the need for objective certainty in determining whether land which may produce gas has been dedicated to interstate commerce.

■ The Commission advances a number of contentions, but all fail to support its conclusion that, even though only two sections were referred to directly, the application included all six sections covered in the contract. First, the Commission found it significant that the contract, which commits production from all six sections to Northern, was attached to the application as a rate schedule. That fact, however, said nothing about what Crawford might reasonably have intended. The Commission's regulations, as the application notes, required the contract to be attached to the application. An application can dedicate less than all the acreage covered by the contract, see Order No. 539, Dkt. No. RM76–8, 40 Fed.Reg. 49571, 49572 (Oct. 23, 1975). It is the language of the application, not that of the contract, which controls. Sun Oil v. FPC, 364 U.S. 170, 175, 80 S.Ct. 1388, 4 L.Ed.2d 1639 (1960) (10-year contract did not shorten term of application which contained no time limitation); Mitchell Energy Corp. v. FPC, 533 F.2d 258, 261 (5th Cir. 1976) (20-year contract does not abridge unlimited application and certificate).

Second, the Commission argues that the language of the application shows the reference to sections 11 and 29 was only intended to restrict the request for emergency relief to those sections. While the application does seek to commence sales on an emergency basis before final Commission approval, the application draws no distinction between sections for which emergency relief is requested and sections otherwise dedicated. The references in the application to "the subject contract," or "the aforesaid sale" are general words which do not evince an intent to expand on the thrice-repeated limitation of the application to sections 11 and 29. The application's first paragraph, quoted above, requests a certificate for "the sale . . . under contract . . . of the gas produced from reserves underlying leases in Sections 11 and 29." The third quoted paragraph refers to "the sale of gas produced from certain lands and leases in Sections 11 and 29." The summary of the provisions "for which a Certificate

is hereby Requested" lists only sections 11 and 29.

 *Third*, at oral argument, Commission counsel cited the application's incorporation of the contract "for all purposes" as conclusive evidence of dedication of all the sections covered by the contract. The context in which that murky language is set throws considerable doubt on that interpretation. It directly follows a reference to sections 11 and 29. If an applicant wanted to dedicate all six sections, surely, in the face of three express limitations within the scope of a short eight page document, it would do more than note that the contract was incorporated "for all purposes." The application must be "read in its entirety and not through a keyhole." *Vreeland v. FPC*, 528 F.2d 1343, 1351 (5th Cir. 1976).

*Finally*, the Commission relies on its expertise in interpreting dedication applications, and says it is the "final interpreter" of its certificates. *See D. C. Transit System, Inc. v. Washington Metropolitan Area Transportation Commission*, 366 F.2d 542, 544 (4th Cir. 1966). In this context, however, the Commission's claim to expertise has little force. The language to be interpreted is not language in a certificate, written by the Commission, but language in an application, written by a private party. No dispute arises over technical language or special usage of words, areas in which the Commission would have special competence.

In sum, this application does not provide substantial evidence to support the Commission's interpretation of it. Read in a common sense fashion, Crawford's application dedicated two sections and no more. It is hard to see how he could have been more specific. The Commission's certificate could therefore not extend to the four sections at issue here. The gas production from these four sections not having been dedicated to interstate commerce, no approval was required for the sale of gas to the intrastate market.

Because abandonment approval was not required for these four sections, we need not reach the petitioner's further contention that Crawford's release terminated his interest under state law, ended any dedication, and so deprived the Commission of the power to impose an abandonment duty on Dow-Harrison.

SET ASIDE.