## SUN OIL CO. *v.* FEDERAL POWER COMMISSION.

No. 321.   Argued April 26, 1960.—Decided June 27, 1960.

*Leo J. Hoffman* argued the cause for petitioner.   With him on the brief were *Martin A. Row, Robert E. May* and *Omar L. Crook.*

*Howard E. Wahrenbrock* argued the cause for respondent. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Doub, Samuel D. Slade, Willard W. Gatchell* and *Peter H. Schiff.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This case presents many of the same issues as *Sunray Mid-Continent Oil Co.* v. *Federal Power Comm'n, ante,* p. 137. Petitioner, Sun Oil Company, is an independent producer making sales of natural gas to transmission companies in interstate commerce for ultimate resale to the public. In 1947 it entered into a contract with the Southern Natural Gas Company, a transmission company, for the sale of natural gas which petitioner controlled in the Gwinville Gas Field in Jefferson Davis and Simpson Counties, Mississippi. The term of the contract was 10 years and the sales price was roughly eight cents per Mcf.

After this Court's decisions in *Phillips Petroleum Co.* v. *Wisconsin,* 347 U. S. 672, on June 7, 1954, the Commission, in a series of orders, required independent producers engaging in jurisdictional sales on or after the date of the decision to apply for certificates of public convenience and necessity pursuant to § 7 (c) of the Natural Gas Act.[1] Under protest, petitioner applied for a certificate "authorizing the sale of natural gas in the circumstances . . . described" in its application. The described circumstances consisted simply of a reference to its contract with Southern Natural, which was at the same time submitted by petitioner as its rate schedule. In an abbreviated and consolidated proceeding disposing of over 100 separate docket certificate applications from 40-odd independent

---

[1] The pertinent provisions of § 7 (c) are set forth in our opinion in the *Sunray* case, *ante,* p. 149, n. 15.

producers, scattered from Colorado and New Mexico to West Virginia, the Commission on May 28, 1956, ordered issued to petitioner and each of the other applicants a certificate of public convenience and necessity, in the terms set out in the margin.[2] Petitioner's contract-rate-schedule was accepted as its FPC Gas Rate Schedule No. 55.

The 1947 contract between petitioner and Southern Natural expired on August 26, 1957. The parties however entered into a new 20-year contract for continued sale of gas from the same field, commencing on September 3, 1957. The contract called for an initial price increase

---

[2] "The Commission ORDERS:

"(A) A certificate of public convenience and necessity be and is hereby issued, upon the terms and conditions of this order, authorizing the sale by Applicant of natural gas in interstate commerce for resale, together with the operation of any facilities, subject to the jurisdiction of the Commission, used for the sale of natural gas in interstate commerce, as hereinbefore described and as more fully described in the application and exhibits in this proceeding.

"(B) The certificate issued herein shall be deemed accepted and of full force and effect, unless refused in writing and under oath by Applicant within 30 days from issuance of this order.

"(C) The certificate is not transferable and shall be effective only so long as Applicant continues the acts or operations hereby authorized in accordance with the provisions of the Natural Gas Act, and the applicable rules, regulations and orders of the Commission.

"(D) The grant of the certificate herein shall not be construed as a waiver of the requirements of Section 4 of the Natural Gas Act, or of Section 154 of the Commission's Rules and Regulations thereunder requiring the filing of rate schedules for the service herein authorized, and is without prejudice to any findings or orders which have been or may hereafter be made by the Commission in any proceeding now pending or hereafter instituted by or against the Applicant. Further, our action in this proceeding shall not foreclose nor prejudice any future proceedings or objection relating to the operation of any price or related provision in the gas purchase contracts herein involved."

of roughly 150 per cent, to 20 cents per Mcf.[3]  Petitioner took the view that the certificate it had received in 1956 was limited in term to the duration of the old contract. It accordingly filed an application for a new certificate covering the new contract, and filed the new contract as an initial rate schedule under the new certificate, pursuant to § 5 of the Act.[4]  The Commission, in a letter order of September 12, 1957, rejected the certificate application as duplicative of petitioner's existing certificate to make sales from the field in question, and rejected the rate-schedule filing on the ground that the purported initial rate schedule was actually a change in its existing Schedule No. 55.  A motion for reconsideration was later denied; and at the same time the Commission ordered suspended, under § 4 (e) of the Act,[5] the effectiveness of the rates in the new contract, which petitioner had, after their rejection as an initial rate schedule, filed under protest, as rate changes pursuant to § 4 (d).  18 F. P. C. 609, 611.  After an application for rehearing of the suspension order was rejected, petitioner petitioned for review of all these orders of the Commission in the Court of Appeals for the Fifth Circuit.[6]  That court affirmed, by a divided vote.  266 F. 2d 222.  We granted certiorari.  361 U. S. 880.

---

[3] There are slight discrepancies in comparison between the old and new rates, due to the fact that they are computed on somewhat different pressure bases.  The Commission states that giving effect to the difference would somewhat increase the spread between the old and the new rates.

[4] For the pertinent provisions, see the *Sunray* opinion, *ante*, p. 144, n. 11.

[5] For the provisions, see the *Sunray* opinion, *ante*, p. 145, n. 13.

[6] The Commission takes the position that an order suspending a rate change under § 4 (e) is not directly reviewable in the Court of Appeals.  But since the very same issues are presented in this case by the Commission's rejection of the application for a new certificate, and its rejection of the filing of the 1957 contract rate as an initial

Petitioner's contention here, as it was below, is that the initial certificate it obtained in 1956 was to remain in effect only during the life of the 1947 contract. This in its view would leave it free to discontinue interstate sales after the 1957 expiration of the contract, or to apply for a new certificate for new sales, and, not unimportantly, file the new sales contract as an initial rate schedule thereunder rather than as a rate change. We reject this contention and affirm the judgment of the Court of Appeals.

*First.* The major part of petitioner's argument is based on a want of authority in the Commission, over objection, to grant an independent producer a certificate for a longer duration than the term of a sales contract which its application seeks permission to fulfill. To be sure, if the Commission had no such authority, we might take pains to read the petitioner's application as seeking a certificate so limited in time, though, as compared with Sunray's in the companion case, it is highly inexplicit as to its desire that only a term certificate be issued. But we have held today in the *Sunray* case, *ante,* p. 137, that in these circumstances the Commission has authority to tender a permanent certificate under an application for a term certificate; and accordingly this keystone of petitioner's argument falls.

*Second.* Of course, if, despite its authority to grant a permanent certificate, the Commission had in 1956 actually granted a term certificate to petitioner, petitioner would after the term have been free to apply for a new certificate to authorize the sale under the new contract.

rate under § 4 (c), which orders are concededly reviewable in the Court of Appeals, all the contested issues raised before the Commission were properly subject to review in the proceedings below and here, as the Commission concedes. If the Commission was in error in rejecting the application for a new certificate and the purported initial rate filing, the § 4 (e) rate change filing, which the petitioner made under protest, doubtless would be withdrawn.

But we agree with the Commission that the 1956 certificate was a permanent one. The application itself, under the construction we have given the statute in *Sunray,* did not with any explicitness ask for a limited certificate. It asked for one "authorizing the sale of natural gas" under the 1947 contract; but as we said in *Sunray,* a permanent certificate would do that. See, *ante,* p. 149. And the certificate issued makes no reference to any limitation of time. This is in contrast with explicit references to the limitation in those instances where the Commission had previously issued term certificates.[7] The Commission's order, which blanketed the many applications before it in the mass proceeding, is no more explicit about limitation than the application, and refers, in fact, to the certificate as both "authorizing the sale" of natural gas, and authorizing a "service," which accords with our construction of § 7 (e) in *Sunray.* Under these circumstances we would hardly see any basis for overturning the Commission's view that no limitation as to time was implied. Cf. *Andrew G. Nelson, Inc.,* v. *United States,* 355 U. S. 554, 560.

Moreover, if there were any doubt as to the matter, it would be removed by the fact that the batch of certificates containing petitioner's was issued at a time when the Commission was asserting that it lacked even the power to issue a term certificate. The certificate in question was issued May 28, 1956. The Commission had taken the position that it lacked such authority on July 25, 1955, in *Sunray Oil Corp.,* 14 F. P. C. 877. It was not until October 29, 1956, that judicial rejection of the Commission's position occurred.[8] *Sunray Mid-Con-*

---

[7] See, *e. g., Louisiana-Nevada Transit Co.,* 2 F. P. C. 546, 549 (10 years); *Ray Phebus,* 2 F. P. C. 1044, 1045 (8 years); *Southern Natural Gas Co.,* 8 F. P. C. 688, 689 (1 year).

[8] While the Court of Appeals there affirmed the Commission's order on other grounds from those on which it had proceeded—for which

*tinent Oil Co.* v. *Federal Power Comm'n,* 239 F. 2d 97, reversed on other grounds, 353 U. S. 944. Nothing in petitioner's application shows an attempt to take issue with that conception of the Commission, which of course would mean that every certificate granted under its influence would be intended to be permanent. It would surpass belief to say that under these circumstances the Commission tendered and the applicants received these certificates under the assumption that they were limited in time to the terms of the contracts on which the applications were based.

*Affirmed.*

[For opinion of MR. JUSTICE FRANKFURTER, concurring in MR. JUSTICE HARLAN's dissenting opinion, see *ante,* p. 159.]

[For dissenting opinion of MR. JUSTICE HARLAN, joined by MR. JUSTICE FRANKFURTER, MR. JUSTICE WHITTAKER and MR. JUSTICE STEWART, see *ante,* p. 159.]

---

action the Court of Appeals' judgment was reversed here—the Commission had, before the Court of Appeals, maintained its position that it was without authority to grant a limited term certificate. 239 F. 2d, at 100, n. 7. It abandoned that position when application for certiorari was made here. 353 U. S. 944.