566 F.2d 536
 44 A.L.R.Fed. 835
 SHELL OIL COMPANY et al., Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
No. 76-3066, Et Al.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 20, 1978.
 
 Thomas G. Johnson, Houston, Tex., for Shell Oil Co.
 Tom Burton, Houston, Tex., for Continental Oil Co.
 Gordon Gooch, Washington, D. C., for Tenneco Oil Co.
 Stephen M. Hackerman, Houston, Tex., for Pennzoil Co.
 Richard F. Generelly, Washington, D. C., for General American Oil Co. of Texas, Ashland Oil, Inc.
 Paul W. Hicks, Dallas, Tex., for Pacid Oil Co.
 David M. Whitney, Houston, Tex., for Aminoil USA, Inc., Aminoil Development, Inc. & Signal Petroleum.
 William A. Sackmann, Findlay, Ohio, for Marathon Oil Co.
 James D. Olsen, Dallas, Tex., for Sun Oil Co. (Delaware).
 Neal Powers, Jr., Houston, Tex., for Ecee, Inc., et al.
 Arthur S. Berner, Houston, Tex., for Ada Resources, Inc., Inexco Oil Co.
 Judy M. Johnson, Houston, Tex., for Transocean Oil, Inc., Perry R. Bass, Belco Petroleum Corp.
 Edmunds Travis, Jr., Houston, Tex., for Exxon Corp.
 Ronald E. Jarrett, Tulsa, Okl., for Skelly Oil Co.
 Patricia D. Robinson, Oklahoma City, Okl., for Kerr-McGee Corp.
 Sam H. Riggs, Jr., Tulsa, Okl., for Cities Service Oil Co.
 Roscoe C. Elmore, Jr., Houston, Tex., for Mobil Oil Corp.
 Larry Pain, Bartlesville, Okl., for Phillips Petroleum Co.
 B. James McGraw, Houston, Tex., for Gulf Oil Corp.
 D. D. Dent, Amarillo, Tex., for Mesa Petroleum Co.
 C. Roger Hoffman, Houston, Tex., for Texaco Inc.
 Pat F. Timmons, Houston, Tex., for The Superior Oil Co.
 Charles E. Hill, Washington, D. C., for Consumer Federation of America.
 Edward J. Kremer, Jr., Dallas, Tex., for Atlantic Richfield Co.
 Kenneth L. Riedman, Jr., Los Angeles, Cal., for Union Oil Co. of California.
 Allan Abbot Tuttle, Sol., Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel, Federal Power Commission, Washington, D. C., for respondent.
 
 
 1
 David G. Stevenson, Tulsa, Okl., for Amerada Hess Corp.
 
 
 2
 Justin R. Wolf, Washington, D. C., for California Co., Div. of Chevron Oil Co.
 
 
 3
 Philip C. Wrangle, Houston, Tex., for The Offshore Co.
 
 
 4
 Jack L. Brandon, Houston, Tex., for Getty Oil Co.
 
 
 5
 Malcolm H. Furbush, San Francisco, Cal., for Pacific Gas & Electric Co.
 
 
 6
 Richard F. Remmers, Oklahoma City, Okl., for Sohio Petroleum Co.
 
 
 7
 David B. Robinson, Washington, D. C., for State of Louisiana.
 
 
 8
 William W. Hensley, Pampa, Tex., for Cabot Corp.
 
 
 9
 Petitions for Review of Orders of the Federal Power Commission.
 
 
 10
 Before CLARK, RONEY and TJOFLAT, Circuit Judges:
 
 TJOFLAT, Circuit Judge:
 
 11
 Shell Oil Company and other natural gas producers bring this petition to review the Federal Energy Regulatory Commission's (FERC) Order No. 539-B, --- F.P.C. ---, 41 Fed.Reg. 32,883 (1976), which established a regulation requiring a producer to act as a "prudent operator" in developing and maintaining deliverability from natural gas reserves.[1] The primary issue before us is whether this Order exceeds the Commission's jurisdiction to regulate the transportation and sale of natural gas in interstate commerce.
 
 
 12
 The FERC claims that the "prudent operator" obligation is an implied condition of the certificates of public convenience and necessity that are required under the Natural Gas Act before companies may transport or sell natural gas in interstate commerce. The Commission relies upon the concept expressed as "service" in the Natural Gas Act[2] to establish its authority to hold certificate recipients to the "prudent operator" standard. No separate statutory or regulatory grant of jurisdiction has been cited by the FERC.
 
 
 13
 The producers, however, argue that the FERC is prohibited from issuing Order No. 539-B by the specific exclusion of "the production and gathering of natural gas" from the Commission's jurisdiction and that the FERC cannot use the power to issue certificates to extend its jurisdiction into the excluded area.[3] We agree with the producers and vacate the FERC's Order.
 
 
 14
 The jurisdiction of the FERC to regulate the natural gas industry is delineated by § 1(b) of the Natural Gas Act, 15 U.S.C. § 717(b) (1970):
 
 
 15
 The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.
 
 
 16
 The producers are subject to the jurisdiction of the FERC when they engage in activities that can be classified as sales or transportation rather than as production or gathering. Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954). Through the years, the "production or gathering of natural gas" exemption has been judicially narrowed. The progression can be seen by comparing FPC v. Panhandle Eastern Pipe Line Co., 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499 (1949) with United Gas Improvement Co. v. Continental Oil Co. (Rayne Field), 381 U.S. 392, 85 S.Ct. 1517, 14 L.Ed.2d 466 (1965). The Panhandle case held that gas leases relate to the production or gathering of natural gas and are thus outside the jurisdiction of the FERC. The Supreme Court narrowly construed Panhandle in Rayne Field when it held that leases that are in essence sales of the gas reserves are within the FERC's jurisdiction. In Rayne Field the producers recast a conventional wellhead purchase of natural gas as a purchase of the leasehold interests in the natural gas field. The Supreme Court described this sale of leasehold interests as "very close in economic effect to (traditional) sales of natural gas," id., 85 S.Ct. at 1520, and stated that:
 
 
 17
 The "production or gathering" exemption relates to the physical activities, processes and facilities of production or gathering, but not to sales of the kind affirmatively subjected to Commission jurisdiction. This accommodation of the two relevant clauses of § 1(b) gives content to the national objectives of the Natural Gas Act as expanded in Phillips, and to the Commission's jurisdiction to accomplish them, while in no way interfering with state regulatory power over the physical processes of production or gathering in furtherance of conservation or other legitimate state concerns. Id. 381 U.S. at 403, 85 S.Ct. at 1523. (Emphasis added.)
 
 
 18
 The FERC can enforce "service obligations" contained in the certificates that it issues to producers, preventing producers from ceasing deliveries from fields admittedly capable of continuing production. This doctrine was developed in Sunray Mid-Continent Oil Co. v. FPC, 364 U.S. 137, 80 S.Ct. 1392, 4 L.Ed.2d 1623 (1960) and Sun Oil Co. v. FPC, 364 U.S. 170, 80 S.Ct. 1388, 4 L.Ed.2d 1639 (1960), based on the power to issue certificates, see note 2 supra, and prevents producers from beginning delivery to another party after the initial contracts expire. Another line of cases permits the FERC to regulate the "abandonment of service." Mitchell Energy Corp. v. FPC, 533 F.2d 258 (5th Cir. 1976); Panhandle Eastern Pipe Line Co. v. Michigan Consolidated Gas Co., 177 F.2d 942 (6th Cir. 1949).
 
 
 19
 No case has been found, however, that extends FERC jurisdiction directly into the physical activities, processes, and facilities of production and development. The cases recognizing the broad scope of the FERC's authority have nonetheless also recognized the "production or gathering" exclusion. In Colorado Interstate Gas Co. v. FPC, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206 (1945), after holding that the FERC could include production properties in the rate base of an interstate pipeline company, the Supreme Court stated:
 
 
 20
 that does not mean that the part of § 1(b) which provides that the Act shall not apply "to the production or gathering of natural gas" is given no meaning. Certainly that provision precludes the Commission from any control over the activity of producing or gathering natural gas. For example, it makes plain that the Commission has no control over the drilling and spacing of wells and the like. Id. at 602-03, 65 S.Ct. at 839.
 
 
 21
 In Continental Casualty Co. v. Associated Pipe & Supply Co., 447 F.2d 1041, 1052 (5th Cir. 1971), we echoed Mr. Justice Black's definition of "the production or gathering of natural gas:"
 
 
 22
 "Production" of gas (means) the act of bringing gas from the earth, and "gathering" (means) the act of collecting gas after it has been brought forth. Panhandle Eastern Pipe Line Co., 337 U.S. 518, 69 S.Ct. at 1262 (Black, J., dissenting).
 
 
 23
 See also Northern Natural Gas Co. v. State Corporation Comm'n, 372 U.S. 84, 90, 83 S.Ct. 646, 650, 9 L.Ed.2d 601 (1963) (" 'production' and 'gathering' are terms narrowly confined to the physical acts of drawing the gas from the earth and preparing it for the first stages of distribution.")
 
 
 24
 Order No. 539-B clearly is intended to open the door to FERC involvement into forbidden production activities:[4]
 
 
 25
 This (prudent operator) standard encompasses the obligations to develop the properties consistent with the performance requirements of lease agreements with mineral owners and/or assignors; all valid rules and regulations of any Federal, state or local government having jurisdiction; and the standard of what a reasonably prudent producer would do with respect to the drilling completion, workover, recompletion or abandonment of wells. --- F.P.C. at ---, 41 Fed.Reg. at 32,884. (Emphasis added.) (Footnote omitted.)
 
 
 26
 To hold that the power to issue Order No. 539-B is within the jurisdiction of the FERC would all but eliminate the "production or gathering" exclusion and would allow the FERC to encroach on areas reserved to the states.[5] We cannot so extend the authority of the Commission.[6]
 
 
 27
 VACATED AND REMANDED.
 
 
 
 [1]
 Order No. 539-B, --- F.P.C. ---, 41 Fed.Reg. 32,883 (1976), establishes 18 C.F.R. § 157.41 (1977), which provides:
 On and after July (30), 1976, all certificates of public convenience and necessity for the sale of natural gas for resale in interstate commerce shall be conditioned as follows:
 All persons making jurisdictional sales pursuant to the authority granted by this certificate are hereby given notice that the contractual obligations between the buyer and the seller are incorporated into the certificate obligations, and that the certificate is further conditioned to require that the seller shall observe the standard of a prudent operator to develop and maintain deliverability from reserves dedicated hereunder.
 Order No. 539-B is the third in a series of FERC orders, dealing with the development and maintenance of natural gas reserves. The first, Order No. 539, --- F.P.C. ---, 40 Fed.Reg. 49,571 (1975), was issued on October 14, 1975, without any notice, comment, or hearing as required for rule-making by the Administrative Procedure Act, 5 U.S.C. § 553 (1970). This Order stated the FERC's intention to enforce "delivery and supply obligations" purportedly contained in producer contracts and producer and pipeline certificates. The FERC's General Policy and Interpretations was amended by this Order by adding a new section, 18 C.F.R. § 2.83 (1975), delineating the FERC's policy on the enforcement of deliverability of natural gas services. On November 28, 1975, the Commission granted reconsideration of Order No. 539 on the application of a number of producers who asserted, among other grounds, that Order No. 539 misinterpreted both the producer-pipeline contractual arrangements and the existing certificate obligations. Issue was also taken with the institution of § 2.83 without following rule-making procedures. Administrative Procedure Act, 5 U.S.C. § 553 (1970). On March 26, 1976, the FERC issued a second order, Order No. 539-A, --- F.P.C. ---, 41 Fed.Reg. 14,531 (1976), to clarify its previous Order and properly to give notice of the intention of the Commission to promulgate § 2.83 pursuant to a rule-making procedure. Finally, the FERC issued Order No. 539-B, withdrawing § 2.83 and instituting § 157.41, on July 30, 1976.
 The impetus behind the FERC's actions was the charge made before various subcommittees of Congress that natural gas producers were avoiding the delivery obligations in their contracts of sale in order to realize greater profits. It was claimed that the producers were diverting natural gas from interstate to intrastate sales or withholding it in hope of future deregulation of the industry. No support for this charge appears in the record before us and the FERC stated in oral argument that its investigation has uncovered no evidence that the natural gas producers have been withholding supplies. We have held that when an FERC order
 originated in a policy decision of the agency and not as the outgrowth of factual determinations, the standard of review is whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1967). Under that standard we determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Superior Oil Co. v. FERC, 563 F.2d 191, at 201 (5th Cir. 1977).
 Section 7(e) of the Natural Gas Act requires the FERC to make findings that a proposed retroactive condition, such as the one imposed by Order No. 539-B, is reasonable and is required by the public convenience and necessity. Pure Oil Co. v. FPC, 292 F.2d 350, 352-53 (7th Cir. 1961); see Atlantic Refining Co. v. Public Service Comm'n, 360 U.S. 378, 394, 79 S.Ct. 1246, 1256, 3 L.Ed.2d 1312 (1959) (Harlan, J., concurring) and Texaco, Inc. v. FPC, 290 F.2d 149, 157 (5th Cir. 1961). In light of the FERC's admission that the natural gas producers were not withholding natural gas from interstate commerce, it is questionable whether Order No. 539-B can survive the limited review explicated in Superior Oil Co. We need not reach this question, however, since it will be shown infra that Order No. 539-B is beyond the FERC's jurisdiction.
 
 
 [2]
 Natural gas companies perform a service to the public, and the Commission's authority extends to ensuring that the service is properly performed even if it is not specifically manifested in a contractual relationship. Sunray Mid-Continent Oil Co. v. FPC, 364 U.S. 137, 80 S.Ct. 1392, 4 L.Ed.2d 1623 (1960). This service is derived from the section of the Natural Gas Act empowering the FERC to issue certificates:
 . . . (a) certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operation, sale, service, construction, extension, or acquisition covered by the application, if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, sale, operation, construction, extension, or acquisition, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied. The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require. 15 U.S.C. § 717f(e) (1970).
 
 
 [3]
 Natural Gas Act § 1(b), 15 U.S.C. § 717(b) (1977). This was the position taken by Commissioner Watts in his dissent from Order No. 539-B
 
 
 [4]
 During oral argument, the FERC's counsel first stated that the FPC could require producers to drill new wells pursuant to Order No. 539-B; counsel later withdrew from this position and stated that the Commission could not do so because such a requirement would be beyond its power. The Commission staff, however, has not adopted a restrictive view of the authority granted to the FERC under Order 539-B. In its initial brief to the FERC in Docket No. RI75-112 (Dec. 6, 1976), the Staff stated:
 Immediate development of these known proved reserves will serve the public interest by increasing the supply of natural gas available to the interstate market. In the event that such development is not undertaken voluntarily by the producers, staff recommends that the Commission use its authority pursuant to Order 539-B to insure full and timely development of these dedicated proved reserves.
 An answer to the question of whether production from "behind the pipe" reserves should be accelerated by drilling new wells involves a policy determination based on a careful consideration of a number of factors . . . Id. at 213. (Emphasis added.)
 
 
 [5]
 The Supreme Court has discussed extensively the legislative history of the Natural Gas Act in Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954) and FPC v. Panhandle Eastern Pipe Line Co., 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499 (1949). See also Panhandle Eastern Pipe Line Co. v. Public Service Comm'n of Indiana, 332 U.S. 507, 514-21, 68 S.Ct. 190, 193-97, 92 L.Ed. 128 (1947); Interstate Natural Gas Co. v. FPC, 331 U.S. 682, 689-90, 67 S.Ct. 1482, 1486-87, 91 L.Ed. 1742 (1947); Colorado Interstate Gas Co. v. FPC, 324 U.S. 581, 601-03, 65 S.Ct. 829, 838-39, 89 L.Ed. 1206 (1945); FPC v. Hope Natural Gas Co., 320 U.S. 591, 609-13, 64 S.Ct. 281, 291-92, 88 L.Ed. 333 (1944); Illinois Natural Gas Co. v. Central Illinois Public Service Co., 314 U.S. 498, 506-08, 62 S.Ct. 384, 397-98, 86 L.Ed. 371 (1942). It is clear that the Natural Gas Act was passed to fill the gap in regulation of the natural gas industry created by judicial holdings precluding state regulation of interstate commerce:
 The Natural Gas Act was designed to supplement state power and to produce a harmonious and comprehensive regulation of the industry. Neither state nor federal regulatory body was to encroach upon the jurisdiction of the other. Congress enacted this Act after full consideration of the problems of production and distribution. It considered the state interests as well as national interests. Panhandle Eastern Pipe Line Co., 337 U.S. at 513, 69 S.Ct. at 1260.
 (Footnotes omitted.)
 
 
 [6]
 One final question raised concerns the "prudent operator" standard promulgated by Order No. 539-B. The argument is advanced that the "prudent operator" standard is inappropriate to FERC's goal to increase production of natural gas because "prudent operator" is a term of art employed in state regulations which are concerned with increasing the total recovery of hydrocarbons through the conservation of natural gas fields rather than permitting operators to waste energy resources by exploitation of reserves. We do not reach the issue due to our disposition on jurisdictional grounds