**AMAREX, INC., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION (Successor to the Federal Power Commission), Respondent,**

**Arkansas Louisiana Gas Company, Intervenor.**

No. 77–1503.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 16, 1978.

Decided July 17, 1979.

Rehearing Denied Aug. 27, 1979.

Stanley L. Cunningham, Oklahoma City, Okl. (Philip D. Hart, Terry R. Barrett, and McAfee, Taft, Mark, Bond, Rucks & Woodruff, a Professional Corporation, Oklahoma City, Okl., on brief), for petitioner.

McNeill Watkins, II, Washington, D.C. (Robert R. Nordhaus, Gen. Counsel, and Philip R. Telleen, Washington, D.C., on brief), for respondent.

Glenn W. Letham, Washington, D.C. (Gilbert L. Hetherwick, Robert Roberts, Jr., Blanchard, Walker, O'Quin & Roberts, Shreveport, La., and Reuben Goldberg, Goldberg, Fieldman & Hjelmfelt, P.C., Washington, D.C., on brief), for intervenor.

James R. Patton, Jr. and David B. Robinson of Patton, Boggs & Blow, and Harry E. Barsh, Jr. of Camp, Carmouch, Palmer, Carwile & Barsh, Washington, D.C., filed briefs, for the State of Louisiana, amicus curiae.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

This case is a review of Opinion No. 798, as modified by Opinion No. 798–A, in which the Federal Power Commission, now the Federal Energy Regulatory Commission, directed Amarex, Inc., to deliver to Arkansas Louisiana Gas Company (Arkla) in interstate commerce natural gas attributable to Amarex's interest in a certain oil and gas lease relating to land situated in Beckham County, Oklahoma. The background facts are not in dispute, and will be fully set out below, as such are deemed to be quite significant.

On May 4, 1967, the First State Bank of Pittsburg (Kansas), as lessor, and Sinclair Oil & Gas Company, as lessee, entered into an oil and gas lease covering the SE ¼ of Section 22, Township 10 North, Range 26 West, Beckham County, Oklahoma. The lease was to remain in force for a primary term ending September 26, 1972. On January 15, 1970, Amarex acquired by assignment Sinclair's interest in the 1967 lease. On June 6, 1970, Amarex and Arkla entered into a gas purchase contract providing for the sale to Arkla for a primary period of twenty years of natural gas produced under the terms of certain "contract leases" described in Exhibit A attached to the 1970 contract. The 1967 lease was one of the "Contract Leases" described in Exhibit A to the 1970 contract.

More specifically, the 1970 gas purchase contract between Amarex and Arkla provided as follows:

### Section 2. Commitment

(A) Subject to the further provisions hereof, [Amarex] hereby agrees to sell and deliver to [Arkla], and [Arkla] agrees to purchase and receive from [Amarex], the natural gas production attributable to [Amarex's] interest in all Contract Wells, and to that end [Amarex] hereby subjects and commits hereto the Contract Leases.

The 1970 contract defined "Contract Leases" and "Contract Wells" as follows:

(F) "Contract Leases" refers to the oil and gas leases and other mineral interests described in the schedule attached hereto and made part hereof as Exhibit A.

(G) "Contract Wells" refers to all wells now or hereafter completed as commercially productive of natural gas on lands covered by the Contract Leases or on a production unit which includes any part of said lands.

The 1970 contract further provided as follows:

This contract shall be subject to all relevant present and future local, state and federal laws, and all rules, regulations, and orders of any regulatory authority having jurisdiction.

In November, 1970, Amarex filed with the Commission an application for a small producer certificate of public convenience and necessity. By virtue of a Commission order regarding small producers, Amarex was granted on August 12, 1971, a blanket certificate of "unlimited duration" [1] covering all of Amarex's sales and service in interstate commerce. The order granting the certificate provided, among other things, as follows:

The grant of the certificates aforesaid for service to the particular customers in-

---

1. The Commission in its opinion No. 798, concluded that the certificate was not limited in duration. *See Sun Oil Co. v. F. P. C.*, 364 U.S. 170, 175, 80 S.Ct. 1388, 4 L.Ed.2d 1639 (1960).

Amarex does not dispute this conclusion. Rather, it argues that the 1972 lease was not within the scope of the dedication.

volved shall not imply approval of all of the terms of the contracts, particularly as to the cessation of service upon the termination of said contracts as provided by Section 7(b) of the Natural Gas Act.

Amarex's service under the 1970 gas purchase contract commenced with initial deliveries to Arkla in November 1971 of gas from acreage described in the 1970 gas purchase contract, though not from the southeast quarter section covered by the 1967 lease. Amarex's lease interest in that quarter section expired by its own terms in September, 1972. Five months earlier, however, the lessors executed a new lease with Amarex covering the same quarter section for a period beginning on the expiration date of the 1967 lease and continuing for a primary term of five years. Prior to executing the 1972 lease, Amarex requested a title opinion, which read, in relevant part, as follows:

> By instrument dated June 6, 1970, Amarex, Inc. and Arkansas Louisiana Gas Company entered into a gas purchase contract covering the lease under consideration. The terms and conditions of the contract are not set forth in the instrument of record, but you are advised that any gas produced from the premises is subject to said contract.

Sometime prior to 1975, the aforesaid Section 22 was declared a drilling and spacing unit by the Oklahoma State Corporation Commission. In August, 1975, a commercially productive gas well was completed in the drilling unit which included the Southeast Quarter of Section 22.

When Amarex refused to comply with Arkla's request that gas attributable to Amarex's interest in the Southeast Quarter be delivered to Arkla, both parties commenced proceedings before the Commission. Arkla first filed a complaint asking the Commission to direct Amarex to deliver to Arkla the natural gas attributable to Amarex's oil and gas leasehold in the aforesaid Southeast Quarter. Amarex, in turn, filed with the Commission a petition for a declaratory order seeking a determination that Arkla was not entitled to the gas attributable to Amarex's leasehold.

The Commission found that no significant questions of fact were presented by either Amarex's petition or Arkla's complaint and directed the parties to file briefs addressing the legal issues involved. Because the petition and the complaint concerned the same factual situation, the two were consolidated.

By Opinion No. 798 the Commission found that the public service obligation, imposed by Amarex's small producer certificate of public convenience and necessity and the terms of the 1970 gas purchase contract between Amarex and Arkla, applied to Amarex's leasehold interest in the Southeast Quarter and directed Amarex to deliver to Arkla any gas produced from or attributable to Amarex's interest in the Southeast Quarter for interstate transportation and sale.

By opinion No. 798–A the Commission denied Amarex's application for rehearing, but permitted Amarex to deliver gas to Arkla under a protective order, pending the outcome of judicial review of the Commission's order.

In our view *California v. Southland Royalty Co.,* 436 U.S. 519, 98 S.Ct. 1955, 56 L.Ed.2d 505 (1978) has great bearing on the present controversy. In *Southland,* the owners of certain acreage in Texas executed in 1925, an oil and gas lease which granted the lessee, Gulf Oil Corp., the exclusive right to produce and market oil and gas from the land for the next 50 years. The owners thereafter sold their remainder interest to Southland Royalty Co., and others. In 1951 the lessee contracted to sell casinghead gas from the leased property to El Paso Natural Gas Co., an interstate pipeline. Following the decision in *Phillips Petroleum Co. v. Wisconsin,* 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954), the lessee applied for a certificate of public convenience and necessity from the Federal Power Commission authorizing its sale of gas to El Paso. The Commission granted the lessee a certificate of unlimited duration. The lessee in 1972 executed a second contract to sell El Paso Natural Gas Co. additional vol-

umes of gas from the leased premises, and obtained from the Commission in 1973 a certificate of unlimited duration for those volumes.

The original 50 year lease involved in *Southland* expired in 1975 and under local Texas law the lessee's interest in the remaining oil and gas reserves terminated and reverted to Southland Royalty Company and the other reversioners. Shortly prior to the expiration of the lease Southland agreed to sell the remaining casinghead gas to an intrastate purchaser at a higher price than El Paso Natural Gas had been paying the lessee. It was in this setting that El Paso Natural Gas Co. filed a petition with the Commission seeking a determination that the remaining gas reserves in the leased property could not be diverted from it and into the intrastate market without abandonment authorization obtained pursuant to the provisions of the Natural Gas Act of 1938. 15 U.S.C. § 717f(b). The Commission agreed with El Paso's contention on the ground that under the Natural Gas Act "service", once instituted, could not be abandoned without Commission permission and approval. On petition for review, the Court of Appeals for the Fifth Circuit reversed the Commission. *Southland Royalty Co. v. F.P.C.*, 543 F.2d 1134 (5th Cir. 1976). In essence, the Court of Appeals held that the lessee for a term of years could not legally dedicate to interstate commerce the gas reserves remaining at the expiration of the lease period, since a lessee cannot "encumber that which it does not own."

The Supreme Court in *Southland* reversed the Court of Appeals and, in effect, upheld the Commission's decision. In so holding the Supreme Court described the Commission's position as follows:

"In this litigation the Commission held that once gas began to flow in interstate commerce from a field subject to a certificate of unlimited duration, that flow could not be terminated unless the Commission authorized an abandonment of service. *The initiation of interstate service pursuant to the certificate dedicated all fields subject to that certificate.* The

expiration of a lease on the field of gas did not affect the obligation to continue the flow of gas, a service obligation imposed by the Act." (Emphasis added.) 436 U.S. at 525, 98 S.Ct. at 1959.

In connection with the foregoing the Supreme Court held that the Commission's interpretation of the abandonment provision of the Natural Gas Act was a "permissible interpretation."

We recognize that *Southland* does not involve the precise question here presented. However, the Supreme Court's approval of the Commission's position in *Southland* that the service obligation attaches to "all fields subject to the certificate" certainly suggests that the Commission's position in the present case should be upheld. The underlying principles in *Southland* control the present controversy and in our view dictate affirmance of the Commission's order.

*Southland, inter alia,* stands for the following: (1) the initiation of interstate service pursuant to a certificate of public convenience and necessity dedicates all fields subject to that certificate; (2) once gas begins to flow in interstate commerce from a field subject to a certificate of unlimited duration, that flow cannot be terminated unless the Commission authorizes an abandonment of such service; and (3) the expiration of a lease on a field of gas does not affect the obligation to continue the flow of gas, a service obligation imposed by the Natural Gas Act.

Applying these principles to the facts of the instant case, we find: (1) when Amarex instituted delivery of gas to Arkla in November, 1971, pursuant to its gas purchase contract with Arkla and under the authority of its certificate of public convenience and necessity, such constituted a dedication of all fields subject to the contract and authorized by the certificate, which would include the gas reserves in the Southeast Quarter with which we are here concerned; (2) gas having begun to flow in November, 1971, from a field subject to a certificate of unlimited duration, such flow could not thereafter be terminated unless the Commission authorized such; and (3) the expira-

tion in September, 1972, of the 1967 oil and gas lease between Amarex and the First State Bank of Pittsburg did not affect the obligation to continue the flow of gas from the field subject to the gas purchase contract, since the service obligation is imposed by the Natural Gas Act independently of property law.

In our view Amarex is in a less favorable position than was Southland Royalty Company. Southland Royalty Company was not a party to the gas purchase contract sought to be enforced in *Southland,* nor had it been selling in interstate commerce pursuant to a certificate of public convenience and necessity. Such is not the present case. Amarex is a party to the gas purchase contract sought to be enforced by Arkla, and Amarex had been making interstate deliveries to Arkla pursuant to a certificate of public convenience and necessity. Southland Royalty Company was a stranger to the gas purchase contract and the certificate involved in *Southland.* Amarex is not a stranger to the gas purchase contract and certificate here involved. Rather, it is a party thereto.

In sum, the fact that Amarex's 1967 lease with the First State Bank of Pittsburg expired in 1972 does not affect the service obligation theretofore imposed on the gas reserves in that quarter section by the prior commencement of delivery under a gas purchase contract covering numerous leasehold interests, including that in the Southeast Quarter, which delivery was authorized by a certificate of unlimited duration granted Amarex by the Commission. Such follows from the teaching of *Southland. Southland* is but a logical extension of *Sunray Mid-Continent Oil Co. v. FPC,* 364 U.S. 137, 80 S.Ct. 1392, 4 L.Ed.2d 1623 (1960) and *Sun Oil Co. v. Federal Power Commission,* 364 U.S. 170, 80 S.Ct. 1368, 4 L.Ed.2d 1639 (1960), and we believe our disposition of the present case is in line with the rationale of *Southland* and those prior cases.[2]

The foregoing opinion was written prior to the recent opinion of the United States Supreme Court in *United Gas Pipe Line Co. v. McCombs,* —— U.S. ——, 99 S.Ct. 2461, 61 L.Ed.2d 54 (1978). We believe that *McCombs* fully supports the result reached in the present case.

The Opinion and Order of the Commission is affirmed.

BARRETT, Circuit Judge, concurring:

I concur in the result reached based upon the facts herein. When Amarex renewed or "top leased" its expired oil and gas lease covering the same quarter section previously committed under the 1970 gas purchase contract, the properties were thus dedicated to the August 12, 1971, small producer certificate of public convenience and necessity. In legal effect, Amarex, upon renewal of the subject lease, became as much a "successor-in-interest" as Phillips did in *Phillips Petroleum Co. v. Federal Power Commission,* 556 F.2d 466 (10th Cir. 1977), thus binding the leasehold interest to the interstate dedication.

In all of the significant decisions upholding the Commission's determination that production is dedicated to the interstate market under a certificate of public convenience and necessity, notwithstanding the variations of factual and legal context, one basic, primary proposition controls, i. e., that there can be no withdrawal from the interstate dedication *once* gas flowed in interstate commerce. *United Gas Pipe Line Company v. McCombs,* —— U.S. ——, at —— and ——, 99 S.Ct. 2461, 61 L.Ed.2d 54 (1979); *Sunray Mid-Continent Oil Co. v. FPC,* 364 U.S. 137, 80 S.Ct. 1392, 4 L.Ed.2d 1623 (1960); *Atlantic Refining Co. v. Public Service Commission of New York,* 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959); *Phillips Petroleum Co. v. Federal Power Commission, supra.*

In *United Gas Pipe Line, supra,* the Court stated that it was re-affirming its interpretation of the reach of § 7(b) of the Act set forth in *California v. Southland Royalty Co.,* 436 U.S. 519, 98 S.Ct. 1955, 56 L.Ed.2d

2. At oral argument it was agreed by all parties that the Natural Gas Policy Act of 1978, Pub.L.

95–621, 92 Stat. 3350 (1978), does not affect this review.

505 (1978): That even expiration of the lease did not terminate the obligation to continue selling the gas (produced therefrom) in the interstate market.

In my view, *Southland* cannot be broadened beyond *United Gas Pipe Line Company,* et al., to include dedications beyond those lands included in oil and gas leases from which production was in fact realized and sold in the interstate market. References in the majority opinion to "fields" does, I believe, substantially broaden the reach of the Commission's regulatory power under § 7(b) which is not warranted.