**MITCHELL ENERGY CORPORATION, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 80–1166.

United States Court of Appeals,
Fifth Circuit.

July 24, 1981.

Before HENDERSON, ANDERSON and SAM D. JOHNSON, Circuit Judges.

HENDERSON, Circuit Judge.

Mitchell Energy Corporation (hereinafter referred to as "Mitchell") petitions for review of a Federal Energy Regulatory Commission [1] order refusing to declare that certain natural gas was not dedicated to interstate commerce, and instead directing Mitchell to apply for authority to abandon interstate service. We do not now decide whether the gas in question is dedicated. We agree that the Commission failed to adequately explain its reasons, and therefore remand the case for further consideration. Before probing into the Commission's duty to engage in reasoned decision making it would be helpful, by way of background, to briefly summarize the meaning of dedication under the Natural Gas Act and the operative facts of this case.

Under § 7(c) of the Natural Gas Act [15 U.S.C.A. § 717f(c)], producers who sell natural gas to pipelines for resale in interstate commerce must obtain a certificate of public convenience and necessity from the Federal Energy Regulatory Commission. Section 7(b) of the Act [15 U.S.C.A. § 717f(b)] obligates these producers to continue supplying gas in the interstate market until the Commission authorizes an "abandonment."

*United Gas Pipe Line Co. v. McCombs*, 442 U.S. 529, 531, 99 S.Ct. 2461, 2463, 61 L.Ed.2d 54, 59 (1979) (footnotes omitted); *accord Harrison v. FERC*, 567 F.2d 308, 310 (5th Cir. 1978).[2] *See generally California v. Southland Royalty Co.*, 436 U.S. 519, 98 S.Ct. 1955, 56 L.Ed.2d 505 (1978); *Sunray Mid-Continent Oil Co. v. FPC*, 364 U.S. 137, 80 S.Ct. 1392, 4 L.Ed.2d 1623 (1960); *Sun*

Morgan, Lewis & Bockius, Frank P. Saponaro, Jr., Washington, D. C., for petitioner.

Jerome Feit, Jane C. Murphy, Joanne Leveque, Attys., F. E. R. C., Washington, D. C., for respondent.

1. FERC assumed most of the duties of the Federal Power Commission on October 1, 1977. In this opinion the term "Commission" refers to one or the other agency, depending on the date of the action discussed.

2. The law in this area is by and large settled. This analysis of natural gas law is undertaken only to provide the background for our administrative law holding. We do not decide any open question on the underlying dedication issue. Any appearance to the contrary is inadvertent. Nor is it our purpose to make any conclusive interpretation of the contract and certificate involved in this case.

*Oil Co. v. FPC*, 364 U.S. 170, 80 S.Ct. 1388, 4 L.Ed.2d 1639 (1960); *Falcon Petroleum v. FERC*, 642 F.2d 780, 784–85 (5th Cir. 1981); *Harrison; Gulf Oil Corp. v. FPC*, 563 F.2d 588 (3d Cir. 1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978); *Mitchell Energy Corp. v. FPC*, 533 F.2d 258 (5th Cir. 1976); *Vreeland v. FPC*, 528 F.2d 1343 (5th Cir. 1976). The Commission has never authorized Mitchell to abandon interstate service so if the gas in dispute has ever been dedicated it is still dedicated. On the other hand, if the gas has not been dedicated Mitchell can put it into intrastate commerce without first procuring the Commission's approval. *But cf. Mesa Petroleum Co. v. FPC*, 441 F.2d 182 (5th Cir. 1971) (abandonment authority necessary even where no certificate).

In the early 1950's Natural Gas Pipeline Company (hereinafter referred to as "Natural") developed plans to extend its pipeline into Texas.[3] As part of these plans Natural entered into a long-term gas purchase agreement with numerous producers, including Oil Drilling, Inc. (hereinafter referred to as "Oil Drilling"), Mitchell's predecessor. The agreement "covered" all gas (except certain production, not here in issue, reserved for development and operation of the leases) from any wells located on the property described in the sellers'[4] leases, including after-acquired leases, in a defined geographic area of about 400,000 acres in and around Wise County, Texas.[5] Natural had the option to refuse to connect wells too far from its gathering lines or those producing only small quantities of

gas.[6] If Natural rejected such a well, the agreement provided for the release of the surrounding acreage. The controversy in this case involves gas from wells subject to the contractual release provision.[7]

Late in October of 1954, Natural, Oil Drilling and others applied to the Commission for certificates of public convenience and necessity authorizing construction of the pipeline and the gas sales. Oil Drilling's application asked for a certificate for the sale of gas to Natural under the agreement which was incorporated by reference. In 1956 the Commission ordered "[c]ertificates of public convenience and necessity be and the same are hereby issued to Oil Drilling [and others], authorizing the sale . . . of natural gas in interstate commerce to Natural as set forth in their applications and in the record in these proceedings. . . ." *Natural Gas Pipeline Co.*, 16 FPC 81, 98 (1956), *aff'd sub nom. Oklahoma Natural Gas Co. v. FPC*, 257 F.2d 634 (D.C.Cir.), *cert. denied*, 358 U.S. 948, 79 S.Ct. 603, 3 L.Ed.2d 567 (1959).[8]

On April 28, 1978, Mitchell sought a Commission declaration that the gas from seventeen wells never connected by Natural, and thus impliedly rejected, was not dedicated to interstate commerce. The Commission denied the request for declaratory relief and ordered Mitchell to apply for permission to abandon the wells. Mitchell's application for reconsideration was denied when the Commission failed to act on its request. Mitchell then petitioned for review.

---

**3.** The Commission has never ruled on the truth of these facts, and even if its argument on the law eventually prevails, Mitchell has yet to prove the facts it alleges. Again, our discussion is by way of background. Should the proceedings require. The Commission is free to make whatever determinations of fact are appropriate.

**4.** The contract referred to all sellers collectively as "Seller."

**5.** The parties disagree on the meaning of this section of the contract.

**6.** The quantity of gas required of a well increased with its distance from Natural's

planned facilities. The contract also provided for the release of depleted wells.

**7.** The parties apparently entered into a rollover contract in 1977, and the Commission accepted it for filing in 1978. The Commission's order does not mention this contract, and the parties have not furnished us with a copy.

**8.** Two alternative pipeline proposals were before the Commission, and the order was addressed primarily to their relative merits. The Commission found it "appropriate to dispose briefly of such questions as arise in respect of the application[ ] of . . . Oil Drilling." 16 FPC at 90. The scope of the dedication was not considered.

The question before the Commission was whether the 1956 certificate covered gas from wells that were not connected by Natural, pursuant to its contract rights. If the gas was within the scope of the certificate, it was dedicated for purposes of the Natural Gas Act when service was initiated, *see, e. g., Falcon,* at 784, and remains so dedicated.

■ By accepting a certificate of public convenience and necessity a gas company agrees to perform the service authorized therein, even if that service is not required by the underlying contract. *Southland; Sunray; Sun Oil Co.* But see NGPA § 2(18)(B)(iii), 15 U.S.C.A. § 3301(18)(B)(iii) (reversion's effect on dedication). The Commission is free to issue a certificate obligating an applicant to perform service exceeding that for which it sought authorization. *Sunray.* So, as the parties agree, the ultimate question is whether the certificate dedicated the gas. If it did, the gas is dedicated to interstate commerce regardless of the terms of the 1954 contract.

■ Although the certificate controls, the Commission oftentimes issues a certificate that simply authorizes the service described in the application, which, in turn, frequently simply requests authorization for the service required under the contract. *See, e. g., Sun Oil Co.,* 364 U.S. at 175, 80 S.Ct. at 1391, 4 L.Ed.2d at 1642. In such cases the scope of the certificate can be ascertained only by examining the application, and perhaps the contract. *Harrison; Gulf.* It follows that in this case there are at least two arguable ways that gas subject to the contractual release provision was dedicated to interstate commerce. It could be said that the certificate dedicates all the gas described in the contract, *cf. Southland,* 436 U.S. at 527–28, 98 S.Ct. at 1959–60, 56

L.Ed.2d at 512–13 (ambiguity of "dedication"), and that the contract dedicates the gas involved here. This is the Commission's explanation before us. Alternatively one could urge that the certificate by its own terms included the gas. This approach, which does not require any reference to the terms of the contract or application, is apparently the basis of the order.[9]

■ If the controlling law is comparatively simple, its application to the facts of this case is not so clear. Despite its duty to do so, the Commission did not articulate the theory supporting its determination, let alone explain its reasoning. *See FPC v. Texaco, Inc.,* 417 U.S. 380, 395–96, 94 S.Ct. 2315, 2325–2326, 41 L.Ed.2d 141, 155 (1974); *SEC v. Chenery Corp.,* 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577–1579, 91 L.Ed. 1995, 1999 (1947); 5 U.S.C.A. § 557(c). This perfunctory treatment of a complicated issue was improper, and it is apparent to us that the Commission failed to give meaningful consideration to Mitchell's contentions. We therefore remand to the Commission for the elaboration it should have provided in the first place. *See* 15 U.S.C.A. § 717r(b); 5 U.S.C.A. § 706.

■ Although it has been said many times and in many ways, we repeat

a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

**9.** This difference is critical to the scope of our review. The Commission's construction of its certificates is entitled to great weight and commensurate deference. *Cf. Seaboard Coast Lie Railway Co. v. United States,* 599 F.2d 650, 652 (5th Cir. 1979) (deference to ICC interpretation of merger conditions); *Harrison,* 567 F.2d at 311 (noting Commission's position). On the other hand, despite the Commission's "expertise and familiarity with natural gas contracts," *Zachary v. FERC,* 621 F.2d 155, 157 (5th Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 795, 66 L.Ed.2d 611 (1980), its interpretation of a contract or application is entitled to less weight, *Harrison. But see Gulf,* 563 F.2d at 616 n. 4 (Aldisert, J., dissenting) (Commission maintains that its interpretation of contracts also carries great weight).

... If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.

*SEC v. Chenery Corp.*, 332 U.S. at 196–97, 67 S.Ct. at 1577–78, 91 L.Ed. at 1999; *accord, Pitre Bros. Transfer, Inc. v. United States*, 580 F.2d 140 (5th Cir. 1978). *But cf. Bowman v. Arkansas-Best Freight*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–442, 42 L.Ed.2d 447, 456 (1974) (remand unnecessary if agency's rationale can be "discerned"); *Colorado Interstate Gas Co. v. FPC*, 324 U.S. 581, 595, 65 S.Ct. 829, 836, 89 L.Ed. 1206, 1219 (1945) (same).

Because we hold that the Commission did not adequately explain the basis of its action, it is appropriate to reproduce here in its entirety the order's brief "Discussion."

The Commission does not agree with Mitchell's contention that the subject gas is not dedicated in interstate commence [sic] to Natural. Mitchell has commenced deliveries under its certificate from acreage covered by its contract with Natural. "The initiation of interstate service pursuant to the certificate dedicated all of the acreage which is subject to that certificate." "Once dedicated, there can be no withdrawal of that supply from continued interstate movement without Commission approval." "The service in which (a) producer engages is distinct from the contract which regulates his relationship with the transmission company...." Furthermore, "the obligation to serve the interstate market imposed by a certificate of unlimited duration can not be terminated by private contractual arrangements." Thus, *all* of the acreage

covered by Mitchell's certificate is dedicated in interstate commerce to Natural. The certificate issued to Mitchell did not provide for pre-granted Section 7(b) authorization with respect to those wells subsequently released from the contract by the purchaser. Nor did the Commission either by the issuance of the certificate or the acceptance of the contract for filing as a rate schedule approve the contractual release provisions. Accordingly, Mitchell's service obligation can not be terminated unless Mitchell obtains Commission approval under Section 7(b).

It follows that the Commission must deny Mitchell's petition for a declaratory order.

Order at 3–4 (citations omitted).[10]

The several quotations are all correct statements of law, but are not in any way dispositive of our problem. The Commission had to decide whether the gas subject to the contractual release provisions was covered by the certificate. There is no question but that if it was, it is dedicated now. Omitting the inapposite portions then, the Commission's explanation of its conclusion that the certificate included the gas reduces to this:

The Commission does not agree with Mitchell's contention that the subject gas is not dedicated in interstate commence [sic] to Natural. Mitchell has commenced deliveries under its certificate from acreage covered by its contract with Natural. "The service in which (a) producer engages is distinct from the contract which regulates his relationship with the transmission group...." The certificate issued to Mitchell did not provide for pre-granted Section 7(b) authorization with respect to those wells subsequently released from the contract by the purchaser [11] Nor did the Commission either by the issuance of the certificate or the

---

10. The omitted citations do not remedy the want of explanation. Even so far as they support the propositions for which they are cited, they only say that once gas is dedicated to interstate commerce it stays dedicated. This is not in issue. Once again, our question—more

precisely the Commission's question—is whether the gas was once dedicated.

11. As both parties note, "pregranted abandonment [authority] was contrary to Commission practice in 1956...." FERC brief at 17 n. 15.

acceptance of the contract for filing as a rate schedule approve the contractual release provisions.

It follows that the Commission must deny Mitchell's petition for a declaratory order.

■ This is simply not enough. The key to the order is the conclusional statement that "the Commission [did not] either by the issuance of the certificate or the acceptance of the contract for filing as a rate schedule approve the contractual release provisions." That is indeed the point, and this is the Commission's answer. However, while the Commission may interpret its certificates, it must give interested parties and reviewing courts at least some idea of the process of interpretation. *SEC v. Chenery Corp.; Pitre Bros.* The order says the certificate did not approve the release provision, yet it never discusses the contract, *see FPC v. Texaco, Inc.*, 417 U.S. 380, 396, 94 S.Ct. 2315, 2325, 41 L.Ed.2d 141, 156 (1974), and the Commission's 1956 opinion, which doubled as the certificate, does not even mention the release clause. *See* note 8, *supra.*

Before us the Commission claimed that "the certificate covered all the acreage dealt with in Mitchell's contract with Natural," and "Mitchell's contract with Natural did not except from dedication the leases at issue here." This argument may be a strong one, but as far as we can tell the order construed the certificate, not the contract.[12] The order does not focus on the contract and "we cannot 'accept appellate counsel's post hoc rationalizations for agency action'; for an agency's order must be upheld, if at all, 'on the same basis articulated in the order by the agency itself.'" *FPC v. Texaco*, 417 U.S. at 397, 94 S.Ct. at 2326, 41 L.Ed.2d at 156 (citations omitted). The Commission should have the opportunity to clarify its meaning.

The case is REMANDED to the Commission for further proceedings consistent with this opinion.

12. In fact, the order's assertion that the 1956 certificate did not approve the release provisions suggests that the Commission read the

contract (as opposed to the certificate) as *not* dedicating the gas.