The SUPERIOR OIL COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

No. 77–1851.

United States Court of Appeals, Fifth Circuit.

March 20, 1978.

Rehearing Denied April 20, 1978.

James M. Dunnam, W. B. Wagner, Jr., Gen. Counsel, Pat F. Timmons, Atty., Houston, Tex., for petitioner.

Allan Abbot Tuttle, Sol., Joseph G. Stiles, Atty., Drexel D. Journey, Gen. Counsel, FPC, Washington, D. C., for respondent.

PETITION FOR REVIEW OF AN ORDER OF THE FEDERAL ENERGY REGULATORY COMMISSION.

Before BROWN, Chief Judge, and GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

The Superior Oil Company (Superior) petitions for review of an order of the Federal Energy Regulatory Commission (FERC).[1] The issue is whether the FERC erred in deciding that Superior's 1953 gas sales contract had not expired of its own terms within the meaning of the FERC's replacement contract policy. We find the FERC decision is reasonable and consistent with the replacement contract policy and affirm the Commission.

In 1953 Superior contracted to sell gas to Michigan-Wisconsin Pipeline Company. The duration of the contract was limited not by years but by a number of events. The contract was to terminate, for example, at the delivery of all reserves in the subject acreage, at the failure of the acreage to produce in paying quantities, or at the inability of the buyer and seller to negotiate a new price term for gas delivered after August 15, 1976. Because the parties failed to renegotiate a price term, Superior terminated the 1953 contract as of August 15, 1976. Superior and Michigan-Wisconsin, however, successfully negotiated a new contract, which became effective on August 15, 1976, at a higher rate.

---

1. The FERC is the successor agency to the Federal Power Commission (FPC).

Superior submitted the 1976 contract and a notice of the related increase in rate to the FERC. The FERC accepted the 1976 contract for filing but rejected the rate increase. *The Superior Oil Co.*, FPC Gas Rate Schedule No. 7, letter order issued September 24, 1976, *reh. denied*, April 12, 1977. In rejecting the rate increase, the FERC reasoned:

The original contract for this sale dated July 17, 1953, provides that the contract is effective until the reserves committed thereunder have been delivered or until such earlier date at which said reserves have ceased to produce in paying quantities or the available gas is reduced to the extent that operation of the buyer's pipe line is no longer profitable. None of the above conditions occurred and therefore, the primary term of the original contract has not expired. Accordingly, your proposed notice of change in rate is not acceptable under the vintaging concepts. . . . [2]

In its order denying rehearing, the FERC further noted that:

[t]he controlling consideration is whether the 1953 contract has expired of its own terms within the meaning of the replacement contract policy. . . .

We think it clear that the 1953 contract has not expired for purposes of the replacement contract policy. . . . The 1953 contract was for an unlimited term with provision for premature termination in the event the parties could not agree on future price renegotiations. For vintaging purposes, it is immaterial whether premature termination occurs in accordance with a provision of the contract or wholly by subsequent agreement of the parties.

In its petition for review of the FERC order Superior claims that as a matter of

contract law the 1953 contract expired by its own terms and that therefore the 1976 contract is a replacement contract within the meaning of the replacement contract policy. Superior further asserts that the FERC interpretation of the replacement contract policy constitutes an unauthorized modification of the non-rate terms of the gas sales contract.

Our initial inquiry is limited to a determination whether the FERC decision is unreasonable or inconsistent with the replacement contract policy. *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965); *Austral Oil Co., Inc. v. FPC*, 560 F.2d 1262, 1265 (CA5, 1977); *Shell Oil Co. v. FPC*, 491 F.2d 82, 88 (CA5, 1974).

The FERC's replacement contract policy was one of several methods designed to minimize the economic dislocation attendant to the elimination of contract vintaging. *See Austral Oil Co., supra.* Since its inception in 1973 the replacement contract policy has been the subject of considerable explanation. As originally propounded the policy relieved producers of old vintage rates whenever "a gas contract dated prior to October 8, 1969, *terminates*, and the purchaser and seller enter . . . a new contract. . . ." Opinion No. 639, *Area Rates for Appalachian and Illinois Basin Areas*, 48 F.P.C. 1299, 1310, *reh. denied*, Opinion No. 639–A, 49 F.P.C. 361 (1973), *aff'd sub nom. Shell Oil Co. v. FPC*, 491 F.2d 82 (CA5, 1974) (emphasis added). In explaining this formulation, the FPC noted that "the new gas ceiling may be applied upon the execution of a new contract [replacing] a contract *which has expired by its own terms.*" 49 F.P.C. at 364 (emphasis in Opinion). In implementing the replacement contract policy the FPC has commented that "[i]n those situations where an

---

**2.** In 1954 the FPC implemented the first of a variety of plans designed to regulate the price paid to producers of natural gas. *See Shell Oil Co. v. FPC*, 520 F.2d 1061, 1065 (CA5, 1975), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2661, 49 L.Ed.2d 394 (1976). One of these plans, implemented in 1960, established rate regulation by contract vintaging, a technique by which the permissible rate for producer gas varied with

the date of execution of the gas sales contract. *See Shell Oil Co. v. FPC*, 491 F.2d 82 (CA5, 1974). Gas sold pursuant to Superior's 1953 contract, for example, was old vintage gas and thus was subject to a lower price ceiling than new vintage gas. In 1973 the FPC determined to eliminate gradually the contract vintaging plan. *Id. See Austral Oil Co. v. FPC*, 560 F.2d 1262 (CA5, 1977).

existing contract is renegotiated prior to termination of the contract, the termination date [of the existing contract and not] the date of the *voluntarily* renegotiated contract, is the critical factor for . . . determining the proper vintage rate." *Mobil Oil Corporation (Operator), et al.,* 49 F.P.C. 239 (1973) (emphasis added).

In 1974 the FPC codified the replacement contract policy and made new gas rates applicable to:

> [s]ales made pursuant to contracts executed prior to or subsequent to the expiration of the terms of the prior contract when the sales were formerly made pursuant to permanent certificates of unlimited duration under such prior contracts which expired of their own terms on or after January 1, 1973, or pursuant to contracts executed on or after January 1, 1973, when the prior contract expired by its own terms prior to January 1, 1973.

52 F.P.C. 1604 (1974), *codified* at 18 C.F.R. § 2.56a(a)(2)(iii) (1976) (current version at 18 C.F.R. § 2.56a(a)(5)(1) (1977)).

In explaining the policy as codified, the FPC stated that

> the base contract must run its full "primary term" before the expiring contract can "rollover," and thus qualify under a replacement contract for the [higher] rate. . . . By "primary term" we mean the actual term of years specified in the base contract, and not as the base contract may be affected by a premature termination provision contained therein (i. e., due to declining pressure or other physical conditions of the sale). Where a producer claims that its base contract has prematurely terminated, it must utilize the available special relief procedure in order to receive a higher rate, since these situations do not fall within the scope of the vintaging concepts. . . .

Opinion No. 770–A, —— F.P.C. —— (November 5, 1976), *aff'd sub nom. The Second Natural Gas Rate Cases (American Public Gas Association v. Federal Power Commission)*, 180 U.S.App.D.C. 380, 555 F.2d 852 (1977).

■ In light of the foregoing statements of the replacement contract policy, and in view of its purposes, we cannot conclude that the FERC decision in this case is unreasonable or inconsistent with the replacement contract policy. The purposes of the policy are to eliminate contract vintaging and to do so in a fashion sufficiently gradual to minimize the economic dislocation that could result from categorical rate increases for old vintage contracts. In this case an event entirely within the control of the contracting parties led to the termination of the contract. Absent that event performance of the contract could have continued for the life of the reserves committed. Insofar as the FERC decision embodies the notion that a contract does not expire of its own terms within the meaning of the replacement contract policy if termination results from the seller's voluntary exercise of a contractual right to terminate, the decision is consistent with a reasonable interpretation of the replacement contract policy. A policy that allowed contracting parties unrestricted freedom to bring themselves within its ambit could not be expected to eliminate vintaging gradually. As the court in *Austral* noted:

> The Commission knew when it adopted the replacement contract policy that existing contracts had indefinite as well as fixed term provisions. It cannot be said that the Commission acted unreasonably when it chose to frame this policy in a way that gave advantage to fixed term contracts.

560 F.2d at 1267.

■ Superior's argument that the FERC, in rejecting the rate increase of the 1976 contract, exceeded its authority by modifying the non-rate terms of a gas sales contract misconceives the effect of the FERC decision. The decision affects only the rate at which Superior can sell its gas. This effect is within the authority of the agency. *Phillips Petroleum Co. v. Wisconsin,* 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954). The FERC decision does not bind the parties to the non-rate terms of either the 1953 contract or the 1976 contract. The decision concludes only that the rate in-

crease contained in the 1976 contract is not a rate increase permitted by the replacement contract policy. Accordingly, the FERC decision does not constitute an unauthorized modification of the non-rate terms of a gas sales contract.

The FERC decision is AFFIRMED.