J. M. ZACHARY et al., Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

No. 79–1754.

United States Court of Appeals, Fifth Circuit.

July 9, 1980.

Bishop, Larimore, Lamsens & Brown, Philip R. Bishop, James R. Lamsens, Tom L. Larimore, Fort Worth, Tex., for petitioners.

Patrick J. McCarthy, Omaha, Neb., for Northern Natural Gas Co., intervenor-appellant.

Joseph G. Stiles, Atty., Washington, D. C., for respondent.

Before CHARLES CLARK, RONEY and GARZA, Circuit Judges.

RONEY, Circuit Judge:

The issue in this case is whether a natural gas contract expired by its own terms, enabling the seller to then charge a higher rate under the replacement contract policy of the Federal Energy Regulatory Commission,[1] when the seller stopped delivery under a contract which was to continue "as long as gas is delivered hereunder in quantities commercial to Seller and Buyer." We uphold the Commission's determination that under its replacement contract policy the contract did not expire by its own terms upon the seller's cessation of delivery, there being no question that gas was still deliverable under the contract in quantities commercial to both the seller and buyer.

The replacement contract policy was adopted to effect the gradual elimination of the two-tiered "vintaging" rate structure. *See Austral Oil Co. v. FPC*, 560 F.2d 1262, 1265–66 (5th Cir. 1977). A replacement contract qualifies for higher rates if the prior contract "expired by its own term."[2] By allowing qualification for higher replacement rates only when a contract terminates in accordance with its terms, the Commission withheld from the contracting parties "unrestricted freedom to bring themselves within [the] ambit" of the policy. *Superior Oil Co. v. FERC*, 569 F.2d 971, 974 (5th Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978); *see Austral Oil Co. v. FPC*, 560 F.2d at 1266.

J. M. Zachary and his copetitioners seek review of Commission orders denying a replacement contract rate on their sale of natural gas to intervenor Northern Natural Gas Company. The gas purchase agreement involved was executed in 1954 by a seller and buyer to whom petitioners, as working interest owners, and Northern, as buyer, are successors in interest. Duration of the agreement is governed by the term here in dispute, which provides:

[1] The order was issued by the Federal Power Commission. Its successor agency, the Federal Energy Regulatory Commission, issued the order denying rehearing. We will refer to the agencies interchangeably throughout this opinion as "the Commission."

[2] 18 C.F.R. § 2.56a(a)(5) (1979) provides in part:

Sales of natural gas in interstate commerce for resale may be made at a rate of 52 cents per Mcf (at 14.73 psia), exclusive of all State or Federal production, severance or similar taxes, and subject to the adjustments provided in this § 2.56a, and the escalation provided in paragraph (a)(6) of this section, provided the sale is made pursuant to (i) a replacement contract where the sale was formerly made pursuant to a permanent certificate of unlimited duration under such prior contract which expired by its own term on or after January 1, 1973, . . . .

Subject to the other provisions hereof, this agreement shall be in force for an original term from its date until the expiration of a twenty (20) year period following the date hereof and *thereafter as long as gas is delivered hereunder in quantities commercial to Seller and Buyer.*

[Emphasis added].

In 1975, more than 20 years after the agreement became effective, petitioners gave written notice to Northern that they were terminating the agreement by refusing to deliver more gas thereunder. Petitioners and Northern then negotiated an interim agreement granting a price increase subject to refund should the Commission disallow the replacement contract rate. The agreement provided for submission of the rate issue to the Commission for a declaratory order. 18 C.F.R. § 1.7(c) (1979).

### I. *Replacement Contract Rate*

██ Petitioners primarily challenge the Commission's decision that the contract did not expire by its own terms upon their cessation of delivery to Northern. The Commission concluded the agreement is not a contract of 20 years' duration, unilaterally terminable thereafter by a refusal to deliver or accept delivery, but rather a "life-of-lease" contract, limited in duration only by the availability of gas in quantities commercial to both seller and buyer. This critical distinction has governed the Commission's implementation of its replacement contract policy.

The Commission has approved filings for replacement contract rates where the original contract was unilaterally terminated after the expiration of a definite term of years in accordance with a contractual provision extending to each party a unilateral right of termination. *E. g., Sun Oil Co.,* FERC Gas Rate Schedule No. 65, letter order issued October 1, 1979; *Gulf Oil Corp.,* FERC Gas Rate Schedule No. 143, letter order issued October 1, 1979.

On the other hand, the Commission and this Court have held that regardless of any provision for premature termination by either seller or buyer, a contract otherwise unlimited in years of duration does not expire by its own terms for purposes of the replacement contract policy unless terminated by circumstances beyond the parties' control affecting the production of profitable quantities of gas. *Superior Oil Co. v. FERC,* 569 F.2d at 973–74.

The issue in the present case, therefore, is whether the agreement is of 20 years' duration and unilaterally terminable thereafter by petitioners, or limited in duration only by the deliverability of commercial quantities. The Commission's interpretation of the disputed contract term in resolving this issue rested on its expertise and familiarity with natural gas contracts. *See United Gas Pipe Line Co. v. Memphis Light, Gas & Water Division,* 358 U.S. 103, 114, 79 S.Ct. 194, 201, 3 L.Ed.2d 153 (1958); *but see Skelly Oil Co. v. FPC,* 532 F.2d 177, 179–80 (10th Cir. 1976). We must affirm unless the Commission's decision is unreasonable or inconsistent with the replacement contract policy. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Superior Oil Co. v. FERC,* 569 F.2d at 973; *Austral Oil Co. v. FPC,* 560 F.2d at 1265.

The Commission reasonably concluded that the disputed provision does not couple an original 20-year term with a unilateral right of termination thereafter. The 20-year term is an assurance that neither party would withdraw from the contract during that period by claiming that quantities delivered were noncommercial. After the first 20 years, however, the "quantities commercial" language became effective, enabling termination if the quantities delivered were noncommercial to either the seller or the buyer. Petitioners have not alleged that quantities delivered under the contract are no longer commercial to them or to Northern.

The interpretation that the contract is terminable only if the quantities deliverable are noncommercial to the seller or the buyer is first founded on the language of the disputed provision. Petitioners contend their cessation of delivery effected a unilateral termination of the agreement. Yet the

word "delivered," as the Commission concluded, connotes the "normal flow of gas" from the well rather than the flow as restricted by the seller. Moreover, inclusion of the phrase "quantities commercial" would be superfluous to a unilateral right of termination exercisable through cessation of delivery.

The second basis for the Commission's interpretation is the absence of provisions for notice in the event of an exercise of a unilateral right of termination. It is unlikely that the parties would have left an intended right of termination to implication rather than expressly providing therefor. The absence of any provision for notification by the seller of impending termination is significant because a simple notice provision would normally be included in a contract creating a unilateral right of termination.

Third, the Commission's interpretation is founded on an examination of the rate provisions in the context of the entire agreement. The agreement includes a detailed provision enabling the seller to negotiate price increases after the first fifteen years of the contract and at five-year intervals thereafter. Having provided for carefully timed price negotiations, the parties are not likely to have also vested the seller with the power to simply cease delivery. This would be tantamount to a forced price negotiation that the seller could precipitate at any time.

Rejecting petitioners' argument that the agreement is of 20 years' duration with a unilateral right of termination thereafter, the Commission reasonably concluded it is of unlimited duration, as long as quantities commercial to both parties are deliverable. In this determinative feature, unlimited duration, the agreement is similar to that involved in *Superior Oil Co. v. FERC*, 569 F.2d 971. As in that case, denial of the replacement contract rate is here consistent with Commission policy, which has reasonably distinguished contracts of unlimited duration from those having a fixed duration. *Austral Oil Co. v. FPC*, 560 F.2d at 1267.

## II. *Other Issues*

■ *Jurisdiction.* Although petitioners themselves sought the declaratory order challenged here, they now contend the Commission lacked jurisdiction to resolve the issue of contract interpretation, which petitioners wish to litigate in state court. The primary impact of the Commission's decision is upon the rate at which petitioners can sell their gas in interstate commerce, a matter within its jurisdiction. Natural Gas Act §§ 1(b), 4(a), 15 U.S.C.A. §§ 717(b), 717c(a); *see Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 676–78, 74 S.Ct. 794, 795–796, 98 L.Ed. 1035 (1954); *Superior Oil Co. v. FERC*, 569 F.2d at 974–75.

The proper exercise of jurisdiction in the implementation of the replacement contract policy is not precluded by the incidental but necessary resolution of an issue of contract interpretation, here a matter within the Commission's special competence. *See United Gas Pipe Line Co. v. Memphis Light, Gas & Water Division*, 358 U.S. at 114, 79 S.Ct. at 201; *Louisiana Power & Light Co. v. FERC*, 587 F.2d 671, 675–76 (5th Cir. 1979).

■ *Evidentiary Hearing.* Petitioners assert the Commission should have conducted an evidentiary hearing or heard oral argument on the issues presented in this case. No evidentiary hearing is required if a question of law rather than a factual dispute is involved. *McCulloch Interstate Gas Corp. v. FPC*, 536 F.2d 910, 913 (10th Cir. 1976); *Otter Tail Power Co. v. FPC*, 536 F.2d 240, 242 (8th Cir. 1976); *Citizens for Allegan County, Inc. v. FPC*, 414 F.2d 1125, 1128 (D.C.Cir.1969).

The interpretation of the disputed contract term in this case presents only a question of law unless ambiguity in the contract requires resort to extrinsic evidence of intent. *United States v. Waterman Steamship Corp.*, 397 F.2d 577, 579 (5th Cir. 1968); *Appalachian Power Co. v. FPC*, 529 F.2d 342, 347–48 (D.C.Cir.), *cert. denied*, 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76 (1976).

Both petitioners and the Commission contend the agreement is clear and unambiguous, and their disagreement as to its proper construction does not inject ambiguity into the contract. *Vreeland v. FPC*, 528 F.2d 1343, 1351 (5th Cir. 1976). No evidentiary hearing was necessary for an interpretation of the contract.

Disposition of the proceeding without oral argument did not violate petitioners' due process rights. *Groendyke Transport, Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir.), *cert. denied*, 394 U.S. 1012, 89 S.Ct. 1628, 23 L.Ed.2d 39 (1969). The Commission did not abuse its discretion in declining to hear oral argument on the legal issues presented. *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 543–46, 98 S.Ct. 1197, 1211–1213, 55 L.Ed.2d 460 (1978).

AFFIRMED.